## THORBURN v. GATES.

(District Court, S. D. New York. July 17, 1915.)

1. MONOPOLIES &⩝28—ANTI-TRUST ACT—CIVIL ACTIONS—SERVICE—VENUE.

The provision in Anti-Trust Act July 2, 1890, c. 647, § 7, 26 Stat. 210 (Comp. St. 1913, § 8829), that any person injured in his business or property by any other person or corporation, by reason of anything forbidden or declared unlawful by the act, may sue therefor in any Circuit Court in the district in which defendant resides or is found, merely removes the existing limitations on the venue of actions between diverse citizens, and permits plaintiff to sue defendant wherever he can serve defendant with process good where executed.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 18; Dec. Dig. &⩝28.]

2. EXECUTORS AND ADMINISTRATORS &⩝525—FOREIGN EXECUTOR—RIGHT TO SUE.

An executor may not, in the absence of statute authorizing it, be sued outside of the state granting his letters.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2344-2349; Dec. Dig. &⩝525.]

3. EXECUTORS AND ADMINISTRATORS &⩝1—NATURE OF PROCEEDINGS—"EXECUTOR."

The subject of administration of estates of decedent is in rem, and an "executor" is only an official charged with the duties of management and distribution, regardless of whether he is vested with title, or whether the obligation to pay debts is personal.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1½; Dec. Dig. &⩝1.

For other definitions, see Words and Phrases, First and Second Series, Executor.]

&⩝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. CONSTITUTIONAL LAW ☞305—DUE PROCESS OF LAW—JURISDICTION OF FEDERAL COURTS.

A state may, as to goods within its own jurisdiction, provide that a foreign executor shall be its own representative, and that process served on him within its borders shall be effective to determine the disposition of such goods; but since the fourteenth amendment a jurisdiction conflicting with the exclusive authority of the state appointing the executor · should be disregarded at the outset, at least in a federal court.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 925–927; Dec. Dig. ☞305.]

5. CONSTITUTIONAL LAW ☞48—CONSTRUCTION OF STATUTES—CONSTRUCTION IN FAVOR OF VALIDITY.

Where a statute may be so construed as will render it valid, such construction should be adopted.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. ☞48.]

6. EXECUTORS AND ADMINISTRATORS ☞525—ACTIONS AGAINST FOREIGN EXECUTORS—JURISDICTION—STATUTORY PROVISIONS.

Code Civ. Proc. N. Y. § 1836a, providing that a foreign executor may be sued in any court in the state in his capacity of executor under like restrictions as a nonresident may be sued, must be construed as opening the courts of New York to suits against foreign executors in cases where the law of the domiciliary state allows it.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2344–2349; Dec. Dig. ☞525.]

7. EXECUTORS AND ADMINISTRATORS ☞525—ACTIONS AGAINST FOREIGN EXECUTOR—JURISDICTION OF FEDERAL COURT.

In an action at law under Anti-Trust Act, § 7, brought against the executrix of decedents jointly charged with the wrongful acts resulting in damage to plaintiff, service of summons on the executrix, a resident of Texas and appointed by the proper court of Texas, which was the residence and citizenship of the decedents, made while she was sojourning in New York, is not authorized by Code Civ. Proc. N. Y. § 1836a, authorizing a foreign executor to be sued in like manner and under like restrictions as a nonresident may be sued.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2344–2349; Dec. Dig. ☞525.]

At Law. Action by Robert H. Thorburn against Dellora R. Gates, as executrix. On motion to quash service of summons. Granted.

Motion to quash the service of a summons in an action at law under section 7 of the Sherman Act. The defendant is executrix of two deceased persons, who are charged jointly with the wrongful acts which resulted in damage to the plaintiff. She is a resident of Texas. The two decedents were Texans by residence and citizenship. She was appointed executrix by the proper Texas courts, who had probated the wills and are assuming administration of the two decedent estates. The summons was served in New York while the defendant was actually sojourning there. Section 1836a of the Code of Civil Procedure of New York is as follows:

"An executor or administrator duly appointed in any other state, territory or district of the United States or in any foreign country may sue or be sued in any court in this state in his capacity of executor or administrator in like manner and under like restrictions as a nonresident may sue or be sued, if, within twenty days after any such executor or administrator shall commence, or appear in, any action or proceeding in any court in this

state or within twenty days after he shall be required or directed by summons or otherwise to appear therein, there shall be filed in the office of the clerk of the court, in which such action or proceeding shall be brought or be pending, a copy of the letters testamentary or letters of administration issued to such executor or administrator duly authenticated as prescribed by section 2704 of the code of civil procedure; in default whereof all proceedings in such action or proceeding may be stayed until such duly authenticated copy of such letters shall be so filed."

Franklin W. M. Cutcheon and A. L. Humes, both of New York City, for the motion.

John S. Wise, Jr., of New York City, opposed.

LEARNED HAND, District Judge (after stating the facts as above). [1] Section 7 of the Sherman Act, in providing that the defendant may be served where "found," did not intend to extend the scope of the process of this court. It meant to remove the existing limitations upon the venue of actions between diverse citizens and to permit the plaintiff to sue the defendant wherever he could catch him with a process good where it was executed. In this respect it differs from the provisions of the Clayton Act (Act Oct. 15, 1914, c. 321) § 12, 38 Stat. 736, which gives a wider scope to the process itself. The validity of the service of this process, therefore, gains nothing from the fact that the action arises under section 7 of the Sherman Act, but is to be judged quite as though it had been an ordinary civil action before the venue of suits between diverse citizens had been limited to the districts of the parties' residence.

[2] Everybody agrees that without the aid of a statute a foreign executor might not be sued outside of the territory of the sovereign who granted his letters. This was already so well established in 1841 that Mr. Justice Story thought it unnecessary to cite much authority upon the point. Vaughan v. Northrup, 15 Pet. 1, 5, 10 L. Ed. 639; Lewis v. Parrish, 115 Fed. 285, 53 C. C. A. 77. The doctrine implies that the devolution of both rights and obligations, effected by the decedent's appointment and the grant of letters, is not regarded as intended for more than purposes of local administration and distribution. A gift causa mortis, a specific bequest after assent by the executor, an inherited freehold, a devise, each of these gives a title which will be recognized in other jurisdictions, because they are intended to have such an effect where they occur, and other states recognize the legal results within their own borders of what has taken place elsewhere. Such might have been equally well the view taken of the rights or obligations of the executor. As hæres factus of the Roman law, from whom he is descended, he might have had the same status as the heir at law actually obtained, and the title and obligation cast upon him might have been regarded as effecting a substitution to be recognized everywhere. Indeed, the executor has title, and the judgment against him was always regarded as personal (Stacy v. Thrasher, 6 How. 44, 60, 12 L. Ed. 337), even though the executor had the defense of plene administravit, and though his actual liability was upon the theory that he had assets in his hands, or had committed a devastavit. Had it not been for the interposition of the ordinary, it is possible that an execu-

tor might have become an heir somewhat as the heir at law; but since the Ordinary assumed always to grant letters of administration, the whole execution of the office became in some sense a public duty, finally conceived as resting wholly in the hands of the state which first undertook it. The unwillingness of other states to entertain such suits seems to be explicable only upon this interpretation of the grant of letters.

[3, 4] I therefore regard the doctrine as having for its necessary corollary that the whole subject of administration is in rem (Jefferson v. Beall, 117 Ala. 436, 23 South. 44, 67 Am. St. Rep. 177), and that the executor is only an official charged with the duties of management and distribution, regardless of whether he be vested with title or whether the obligation to pay debts be personal. These are perhaps concessions to his historical evolution, which have now ceased to indicate existing notions. Section 1836a of the Code of Civil Procedure of New York must be read in the light of these general ideas regarding the status of executors. No doubt the state of New York, as respects goods situated within its own jurisdiction, might provide that an executor appointed elsewhere should be its own representative, and that process served upon him within its own borders should be effective to determine the disposition of all such goods. Stacy v. Thrasher, supra; McLean v. Meek, 18 How. 16, 15 L. Ed. 277. Yet if it attempted to go further than this, to take any steps towards the disposition of decedent's goods situated elsewhere and under the existing administration of another state, it would violate the common understanding respecting such matters and expose itself to the disregard of its judgments by the state which had appointed the executor and assumed the direction of his official conduct. Moreover, since the fourteenth amendment, the assumption of such a jurisdiction which conflicted with the exclusive authority of another state over a matter within its jurisdiction would itself be disregarded at the outset, at least in a federal court; nor would the executor be left to the assertion of the invalidity of such proceedings, when it was presented for execution or as evidence. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Dewey v. Des Moines, 173 U. S. 193, 19 Sup. Ct. 379, 43 L. Ed. 665; Goldey v. Morning News, 156 U. S. 518, 15 Sup. Ct. 559, 39 L. Ed. 517.

[5, 6] Section 1836a may be construed as intended for no more than to open the courts of the state to litigation in those cases where the law of the state appointing the executor authorized a foreign action; but in that case the validity of the process would be wholly dependent upon a condition of the law of Texas, which does not in fact exist. In so far, however, as without the authority of Texas, New York should attempt to adjust the obligations of the executor as such, and to make any final determination of his obligations in the distribution of assets already in process of administration in Texas, its act would necessarily be brutum fulmen in its result, and unconstitutional in its inception. Nor, indeed, is it in this instance possible to construe the section as intended to affect only goods now or hereafter within the jurisdiction of New York, as suggested above, because the language of the act is not apt to express such a distinction, and, in the absence of

some authoritative interpretation by the Court of Appeals of New York to that effect, no such construction should be placed upon it. Since, however, an interpretation may be placed upon the statute which is consonant with its constitutionality, that interpretation should be chosen, and the statute read only as opening the courts of New York to suits against executors in those cases where the law of the domiciliary state allows it.

[7] I have found only one decision upon such a statute, and that is the case of Craig v. Toledo, Ann Arbor & North Michigan R. R. Co., 2 Ohio N. P. 64, which is to the contrary. However, this decision does not pass upon the validity of the act in respect of its extraterritorial effect, but only goes so far as to hold that the state might determine in what cases a foreign executor might be sued, leaving for further determination the extent to which the judgment would be effective. That may well be true in Ohio; yet, as I have said, I hardly think that it can be supposed in the case of the New York Code, which contains full provisions for ancillary administration, that the suit authorized against foreign executors under section 1836a was only intended as an incident to ancillary administration. In any case I do not feel disposed to follow that case, if it is to be interpreted more broadly.

Two objections may be raised to this disposition of the motion: First, it may be suggested that a federal court does assume jurisdiction over the determination of suits against executors, though it will leave to the state courts of probate the actual enforcements of the decrees which result. In answer it must be remembered that a federal court is not the court of an independent state, and that in any event it does not attempt to obtain jurisdiction outside of the state in which the executor is appointed. The Constitution, in giving to federal courts jurisdiction over controversies between diverse citizens by sovereign power, gives an authority pro tanto over domestic administration which does not exist between independent states. It might, indeed, have gone further and made effective its own decrees, assuming the total administration of decedents' estates, except for the fact that this might involve purely domestic matters, and perhaps because it had no machinery.

The second supposed difficulty is practical, and arises from the fact that an absentee executor might remain inaccessible to the control of the state which appointed him. This question, however, goes only to the power of the state, which has assumed administration of the decedent's assets, to secure an efficient administration, and cannot be the excuse for the assumption by another state of those functions. I do not forget those cases where the executor, having assets in his possession, has repudiated the authority of his own state and taken them out of its power. Bergmann v. Lord, 194 N. Y. 70, 77, 86 N. E. 828; Lewis v. Parrish, 115 Fed. 285, 53 C. C. A. 77. Those cases are to be interpreted upon the theory that the executor, having abandoned his obligations and being disposed to assume mere personal dominion over the assets, is lost to the state which originally assumed jurisdiction, and ceases to be effectively subject to any law. He becomes, as

it were, an outlaw, who may be brought to account and compelled to do justice personally wherever he may be found.

I have assumed throughout that section 1836a of the Code of Civil Procedure may give jurisdiction to a federal court. This question need not be decided, because, even assuming it to be determined in the plaintiff's favor, it will not serve to protect the process here in question.

Motion to quash is granted.