**DOWNING v. HOWARD et al.**
Civil Action No. 457.

District Court, D. Delaware.
Sept. 27, 1946.
As Amended Oct. 18, 1946.

8

William H. Bennethum, of Wilmington, Del., and John F. Davidson and Ralph Bernstein; both of New York City (Mar-

vel & Morford, of Wilmington, Del., of counsel), for complainant.

Caleb S. Layton, of Wilmington, Del., and Ralph M. Carson, of New York City (Richards, Layton & Finger, of Wilmington, Del., Thomas B. K. Ringe, of Philadelphia, Pa., and Allen T. Klots, Orison S. Marden, and Neal M. Welch, all of New York City, of counsel), for defendants George Whitney et al.

William S. Potter, of Wilmington, Del. (Southerland, Berl & Potter, of Wilmington, Del., and Whitman, Ransom, Coulson & Goetz, Simpson, Thacher & Bartlett, Bigham, Englar, Jones & Houston, Blair & Ogden, Edwin Foster Blair, Robert I. Stevenson, and LeBoeuf & Lamb, all of New York City, of counsel), for defendants George H. Howard et al.

William Prickett, of Wilmington, Del., and Horace R. Lamb, of New York City (LeBoeuf & Lamb and Thomas P. Cook, all of New York City, of counsel), for defendants Edna Rogers Carlisle and Randall J. LeBoeuf, Jr., executors of Floyd L. Carlisle, deceased.

Caleb S. Layton, of Wilmington, Del., and Sidney W. Davidson, of New York City (Richards, Layton & Finger, of Wilmington, Del., of counsel), for defendants Francis Skiddy Von Stade, executor, and Guaranty Trust Co. of New York, trustee, under will of Charles Steele, deceased.

John J. Morris, Jr., of Wilmington, Del., for defendant United Corporation.

LEAHY, District Judge.

The major question for decision is whether this action is simply a traditional stockholder's derivative suit based upon a

breach of fiduciary duties by officers and directors acting under an unlawful conspiracy to waste assets with other defendants or whether this action is brought to enforce any duty or liability created under the Public Utility Holding Company Act of 1935. This is the first time the question has been put and everyone shares my inability to find a controlling authority on the first two alleged causes of action.

■ 1. While the complaint charges the action is based on § 25 of the Act, the allegations of waste of corporate assets and the profits illegally obtained are the resultants of violations by officers and directors of their common law fiduciary duties in failing to exercise independent judgment for the good of the corporation and their participation in a fraudulent conspiracy with other defendants to profit at the expense of United. As to the first cause of action based on violation of the Act by holding of securities and the second cause of action based on voting for the merger of Mohawk and Niagara, if United had registered, these transactions would have been legal. Yet the loss to United would have been the same. Hence, the real cause of the loss was not failure to register, i. e., violation of the Act, but the loss resulted from the "fraudulent conspiracy among defendants to waste the assets of United and to profit at the expense of" United. At best, the alleged violations were violations by United. There is no provision in the Act imposing a duty or liability on officers or directors, as such, or upon outsiders acting in concert with officers and directors.

■ Clearly, then, the suit at bar is not a "suit in equity * * * brought to enforce any liability or duty created" by the Act. Absent other jurisdictional elements, a minority stockholder may not resort to the federal courts on simple allegations that directors and officers, with other co-conspirators, have violated federal statutes— such as anti-trust laws and the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq.— in addition to committing breaches of fiduciary duty. Cf. Meyer v. Kansas City Southern R. Co., D.C., 11 F.Supp. 937, affirmed 2 Cir., 84 F.2d 411, 414, certiorari denied 299 U.S. 607, 57 S.Ct. 233, 81 L.Ed.

448. In the Meyer case, although not a direct action for violation of federal statutes, it was nevertheless said: "But so far as the [officers and directors] are liable for a breach of the fiduciary duties to minority stockholders imposed upon them by reason of their control of the St. Louis Southwestern, it is immaterial that their breaches of faith to the appellant also involved violations of federal statutes. The appellees' liability would be complete though their acts were not public offenses and a determination of federal law is thus not necessarily involved."

■■ Statutes conferring federal jurisdiction must be strictly construed, Indianapolis v. Chase National Bank, 314 U.S. 63, 76, 77, 62 S.Ct. 15, 86 L.Ed. 47; Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951; and my construction of the Act leads to this view: To fulfill the express purposes of this particular legislation, there are three specific sanctions spelled out in the Act: First, injunction, § 18(f), 15 U.S.C.A. § 79r(f), at the instance of the SEC; second, criminal punishment, § 29, 15 U.S.C.A. § 79z—3, at the instance of the Attorney General or any of his United States Attorneys; and third, § 26(b), 15 U.S.C.A. § 79z(b), which declares that contracts made in violation of the Act are void. Under § 4(a) (2) of the Act, it has been held that a private party, i. e., a stockholder, may maintain a stockholder's derivative action to recover on behalf of a corporation the consideration which has passed in connection with a contract which was specifically prohibited by § 26(b). Goldstein v. Groesbeck, 2 Cir., 142 F.2d 422, 426, certiorari denied 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590.

■ Plaintiff's main reliance is on the Groesbeck case, supra. There, a derivative stockholder's suit was instituted against Electric Bond & Share Company, its directors and subsidiaries. Bond & Share did not register under the Act, but challenged its constitutionality. Service company subsidiaries were organized to render contractual and financial services and they entered into contracts with operating utility subsidiaries. The suit was to recover fees paid by the operating subsidiaries. The court held that under the Act the contracts were

void and that recovery could be had under § 26. Now, my analysis of the Act fails to disclose any sanction against the holding of stock by an unregistered holding company comparable to the specific sanction given, for example, with respect to service contracts. In fact, the Act expressly prescribes the legal consequences of making forbidden contracts, i. e., such contracts are void. The holding of the Circuit Court in the Groesbeck case was based, therefore, not on the violation of § 4(a) but that § 26(b) "in express terms declares the contracts void." The case at bar involves no contracts void by virtue of the Act. The facility with which the Groesbeck case may be distinguished makes it of little help to our present problem. I conclude that plaintiff can not maintain a stockholder's derivative action in equity against United's officers and directors and other third party conspirators for causing United to violate § 4(a) of the Act. There is no provision in the Act giving a sanction against the acts complained of by permitting a private party to sue and to apply such sanctions. § 4 (a) is penal in nature in order to force subject companies to register under § 5. For failure to register, a company may be subject to the penalty provided in § 29—a penalty not to exceed $200,000. Electric Bond & Share Co. v. Securities and Exchange Commission, 303 U.S. 419, 442, 58 S.Ct. 678, 82 L.Ed. 936, 115 A.L.R. 105, manifestly suggests that the sanctions of § 4(a) are penal in nature.[2] Moreover, § 4 (a) would appear to be a regulatory statute; and a violation of its provisions would give no right of action to a private party. The Congressional Reports[3] show that § 4(a) establishes the mechanism by which holding companies are brought under the jurisdiction of the SEC so that the provisions of Title I may be effectively administered. A further analysis of the Act shows that when Congress intended to give private parties remedies under the Act, it so specified. § 17(b) prohibits officers and directors, under certain circumstances, from realizing profits, in other instances, from purchase and sale of securities of a subject company or any of its subsidiaries.[4] Again, § 16, dealing with private parties, creates liability for the making of false statements and applications.[5] No such specificity of remedy to a private party may be found with respect to § 4(a).[6] In the last analysis, it seems clear that the duty

---

[2] See, too, North American Co. v. Securities Exchange Commission, 66 S.Ct. 785, 793, n. 8, which states that holding companies "are forced to register by reason of the provisions of § 4(a)."

[3] S. 621, 74th Cong., 1st Sess., p. 25; H.R. 1318, 74th Cong., 1st Sess., p. 11.

[4] Section 17(b), 15 U.S.C.A. § 79q(b): "Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the company entitled thereto or by the owner of any security of such company in the name and in the behalf of such company if such company shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized."

[5] Section 16, 15 U.S.C.A. § 79p: "(a) Any person who shall make or cause to be made any statement in any application, report, registration statement, or document filed pursuant to any provision of this chapter, or any rule, regulation, or order thereunder, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact shall be liable in the same manner, to the same extent, and subject to the same limitations as provided in section 78r of this title with respect to an application, report, or document filed pursuant to sections 78a to 78jj of this title.

"(b) The rights and remedies provided by this chapter, except as provided in section 79q of this title, shall be in addition to any and all other rights and remedies that may exist under sections 77a to 77mm of this title or sections 78a to 78jj of this title, or otherwise at law or in equity; but no person permitted to maintain a suit for damages under the provisions of this chapter shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of. Aug. 26, 1935, c. 687, Title I, § 16, 49 Stat. 829."

[6] I find the principle just discussed recently applied in this Circuit. See Steckler v. Pennroad Corp., D.C., 44 F.Supp. 800, affirmed 3 Cir., 136 F.2d 197, certiorari denied 320 U.S. 757, 64 S.Ct. 64,

of enforcing compliance with the Act is, with the exceptions noted, the exclusive function of the SEC.

■ The alleged violation of the Act under the third cause of action is without substance. There is no requirement under the Act or any rule of the SEC that a subject company must submit a particular plan. A § 11(e) holding company is given an option to submit a plan for divestment of control or of securities of subsidiaries. Section 11(e) is permissive, not mandatory, and it was so held in Commonwealth & Southern Corp. v. Securities and Exchange Commission, 3 Cir., 134 F.2d 747, 751.

■ As I have concluded that the jurisdiction of this court, in the instant case, can not be based upon § 25 of the Act, it follows, under my view, that plaintiff is prosecuting the traditional minority stockholder's suit for waste and dissipation of assets through breach of common law fiduciary duties. Without jurisdiction based on § 25 of the Act, it can not be based on diversity. The amended complaint shows three defendants are citizens of the same state as plaintiff. This is not true diversity. See 1 Moore, Federal Practice, p. 481, for collection of cases.

Moreover, a number of defendants have moved to dismiss the complaint or to set aside the service of process as to them. These defendants are executors and trustees of the various estates of former officers and directors who have, since the time of the acts complained of, died. These defendants have been appointed by foreign courts and are administering their respective estates outside of the District of Delaware, i. e., New York, Pennsylvania, etc. The questions raised are (a) does this court have jurisdiction over the persons of foreign executors and trustees where the decedent has no assets in Delaware and died without the District of Delaware; (b) may this court determine the claim asserted against these defendants in their capacity as executors and trustees;

and (c) does § 25 of the Act or any other federal statute confer jurisdiction over the moving defendants or the claim asserted against them as executors and trustees?

Here, again, it is unnecessary to deal with these questions in view of the conclusion already reached that this is not an action based upon § 25 of the Act. But, if it again be said that plaintiff is simply prosecuting the traditional minority stockholder's suit, the conclusion is there can be no jurisdiction over those particular defendants representing the foreign estates.

■ Absent funds, here, belonging to the foreign estates, personal representatives, appointed by foreign courts, may not be sued in this district in their representative capacities where the suit is an attempt to establish a claim against the estates of foreign decedents—here, the former non-resident alleged wrongdoers. Rule 17(b) of the Rules of Civil Procedure fixes the capacity to sue and be sued in the federal court. Under the rule, I look to the law of Delaware to determine whether the moving defendants may be sued here. Delaware has it settled that where an estate of a decedent is in process of administration by foreign executors and the estate has no assets in Delaware and a defendant, as personal representative, has not voluntarily submitted to suit, there is no jurisdiction over the person of such foreign representative or the claim alleged and asserted against such foreign estate. Bowles v. K. G. Dun-Bradstreet Corp., Del.Ch., 12 A.2d 392. Moreover, here the foreign estates are already being administered; and, the New York courts, for example, will not, on the basis of comity, recognize a judgment rendered by a foreign court against executors appointed in New York. Helme v. Buckelew, 229 N.Y. 363, 128 N.E. 216; McMaster v. Gould, 240 N.Y. 379, 148 N.E. 556, 40 A.L.R. 792; Burrowes v. Goodman, 2 Cir., 50 F.2d 92, 77 A.L.R. 249. Absence of comity by the courts of the decedent's

88 L.Ed. 451, involving a stockholder's suit against directors for accounting, where directors caused corporation to purchase stock of railroads in violation of New York and Massachusetts statutes.

domicile questions the foreign court's constitutional power to adjudicate a claim against a non-resident decedent's estate. Riverside & Dan River Cotton Mills v. Menefee, 237 U.S. 189, 196, 35 S.Ct. 579, 59 L.Ed. 910; Thorburn v. Gates, D.C., 225 F. 613, 616.

2. The question was also argued that, assuming arguendo the present complaint stated a good cause of action based upon § 25 of the Act, this court had no jurisdiction over the foreign representatives of the estates in question. Any discussion as to this second point would be simply dicta; and, as I have already decided no cause of action exists, the second point argued becomes moot. It is my opinion it should be left such.