## DOWNING v. HOWARD et al.

### No. 9314.

Circuit Court of Appeals, Third Circuit.

Argued May 20, 1947.

Decided June 24, 1947.

John F. Davidson, of New York City (William H. Bennethum, of Marvel & Morford, all of Wilmington, Del., and Ralph Bernstein, of New York City, on the brief), for appellant.

Wm. S. Potter, of Wilmington, Del. (Southerland, Berl & Potter, of Wilmington, Del., and Richard Joyce Smith, John J. Burns, Louis Connick, Horace R. Lamb, Edwin F. Blair, and George S. Brengle, all of New York City, on the brief), for appellees George H. Howard et al.

Ralph M. Carson and Allen T. Klots, both of New York City (Richards, Layton & Finger and Caleb S. Layton, all of Wilmington, Del., Thomas B. K. Ringe, of Philadelphia, Pa., and Orison S. Marden and Cleveland C. Cory, both of New York City, on the brief), for appellees George Whitney et al.

Before MARIS, GOODRICH, and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

Plaintiff is the owner of shares of United Corporation (of Delaware), hereafter called United. He brought this action in the United States District Court for the District of Delaware on behalf of himself, other shareholders of United, and the Corporation against individuals or, in some instances, their personal representatives, who had been directors of United and certain other persons alleged by plaintiff to have conspired with the directors to the detriment of the Corporation. Most of the individual defendants are neither residents of Delaware nor engaged in business there. Plaintiff, however, says that he is properly in the federal court under § 25 of the Public Utility Holding Company Act of 1935.[1] He concedes that unless he has stated a cause of action "created" by that statute[2] his action in the District Court of Delaware will not lie.[3]

There is much general language in plaintiff's amended complaint which sounds in terms of the usual shareholder's action against directors for corporate mismanagement. The defendants argue strenuously that this is the gist of plaintiff's claim and that reference to the Public Utility Holding Company Act of 1935 is simply added as decoration to give a semblance of verisimilitude to the plaintiff's assertion of federal jurisdiction. Contrariwise, we have the plaintiff in the highly unusual situation of stating that his general claim for mismanagement does not state a cause of action at all, but that his real grievance against the defendants is their causing the corporation to violate the Public Utility Holding Company Act of 1935 by compelling action or non-action by United. It is apparent that the question which we have to settle is whether the plaintiff has stated a basis for recovery under the federal statute just mentioned. If he has, the fact that he also asserts a non-federal ground does not lose him his privilege of suing in the federal court.[4]

[1] 49 Stat. 835, Act Aug. 26, 1935, 15 U.S.C.A. § 79y.

[2] "Any suit or action to enforce any liability or duty created by * * * this title * * * may be brought in any such [the district wherein any act or transaction constituting the violation occurred] district or in the district wherein the defendant is an inhabitant * * *, and process in such cases may be served in any district of which the defendant is an inhabitant * * * or wherever the defendant may be found." 49 Stat. 835, Act Aug. 26, 1935, 15 U.S.C.A. § 79y.

[3] The question of jurisdiction is presented in this case in a different fashion from that in an ordinary diversity case. In the latter, if the plaintiff makes the proper allegations of residence of the parties and alleges the amount sufficient to bring him into federal court, the court has jurisdiction. If the plaintiffs complaint fails to state a cause of action, he loses, not through lack of jurisdiction, but because of the insufficiency of his substantive allegations. In this case the assertion of a cause of action "created" by the violation of the statute is necessary to bring him into federal court at all, ordinary diversity grounds being lacking as they are here. If and when a court decides that the complaint is insufficient in stating a cause of action created by the violation of this particular statute, it also necessarily decides that it has no jurisdiction.

[4] Cromwell v. Hillsborough Tp., Somerset County, New Jersey, 3 Cir., 1945, 149 F.2d 617, affirmed Township of Hillsborough v. Cromwell, 1946, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358, and authorities cited.

On·the other hand, if the substance of his claim is one based on state law, the reference to the federal statute is not enough to bring him into federal court, unless he has independent grounds for coming there.[5] We do not have to decide whether the plaintiff has stated an actionable claim of a more or less orthodox shareholders' suit type. We do have to decide whether he has stated a basis for recovery under the Public Utility Holding Company Act of 1935. The District Court concluded that he had not and dismissed his complaint. 68 F.Supp. 6. On this appeal we must, of course, assume all the plaintiff's well pleaded facts to be true.

■ Plaintiff has alleged three causes of action. We shall deal with the third one first because it is the easiest. In his third cause of action the plaintiff complains that the defendant directors failed to file with the Securities and Exchange Commission a voluntary plan for reorganization of the Corporation as permitted by the Public Utility Holding Company Act of 1935.[6]

The fatal obstacle to the plaintiff's complaint on this score is that the legislation does not require the company to furnish a plan.[7] A cause of action can hardly be based upon disobedience of the statute when the statute does not require the act, the non-doing of which is complained of by the plaintiff. Plaintiff's complaint, therefore, as to this cause of action stops at this point so far as it is predicated upon liability under the federal statute. If there is possible liability on the part of defendants because they failed to take advantage of such a device as filing a plan, that breach of duty, if any, is a violation of one of the ordinary duties of the directors to exercise proper management. It has nothing to do with the federal statute at all and cannot be a basis for resort to federal court unless the necessary diversity of citizenship existed.[8] It is quite clear in our minds that the plaintiff has produced nothing in his third cause of action which gives him the slightest basis for a suit in a federal court.

This conclusion necessarily carries with it an approval of the action by the Trial Judge in dismissing the complaint as to all defendants who became directors subsequent to March 28, 1938, the date on which United registered with the Securities and Exchange Commission under the Public Utility·Holding Company Act of 1935.

Bearing in mind that any question of proof of the allegations he makes is not now before us, we next come to the more difficult questions raised by the first and second causes of action which plaintiff alleges.

The claim made by the plaintiff in the first alleged cause of action can really be stripped down to a very few words. The provisions of the Public Utility Holding Company statute required United to register with the Securities and Exchange Commission by December 1, 1935.[9] Due to the action of the then directors, United failed to register and this failure continued until March 28, 1938.[10] During the time in which United failed to register certain securities held by it which had a market value of $194,000,000 on December 1, 1935, depreciated to $107,000,000 by March 28, 1938. This is the loss occasioned by Unit-

[5] Herrmann v. Edwards, 1915, 238 U. S. 107, 35 S.Ct. 839, 59 L.Ed. 1224; Meyer v. Kansas City Southern Ry. Co., 2 Cir., 1936, 84 F.2d 411, certiorari denied, 1936, 299 U.S. 607, 57 S.Ct. 233, 81 L.Ed. 448.

[6] 49 Stat. 822, Act Aug. 26, 1935, 15 U.S.C.A. § 79k. Plaintiff states that eventually the directors did cause to be filed what the plaintiff considers "a mere semblance" of, or "token type" of, plan which the Commission rejected.

[7] Commonwealth & Southern Corporation v. S. E. C., 3 Cir., 1943, 134 F.2d 747; see American Power & Light Co.

v. S. E. C., 1946, 329 U.S. 90, 119, 67 S. Ct. 133.

[8] Complete diversity does not exist because three of the defendants reside in the same state as the plaintiff.

[9] 49 Stat. 812, Act Aug. 26, 1935, 15 U.S.C.A. § 79d.

[10] This was the day the Supreme Court of the United States upheld the constitutionality of the registration provisions of the statute. See Electric Bond & Share Co. v. S. E. C., 1938, 303 U.S. 419, 58 S.Ct. 678, 82 L.Ed. 936, 115 A. L.R. 105.

ed which the plaintiff says these defendants must make up.[11]

Section 5 of the statute permits registration by certain holding companies, of which United is one. Section 4 forbids unregistered holding companies to own shares, sell shares, trade shares, and many other things. These restrictions are the penalty[12] provided for failure to register if such registration is required and this penalty provision was before the Supreme Court of the United States in the Electric Bond & Share Co. case, previously cited. Defendants say that the penalty provisions in § 4(a) are just that and no more, that they have nothing to do with private rights one way or the other. Plaintiff says that this is not the case at all and points for support to the general principle that where a statute is enacted for the ·protection of certain persons those injured by defendants' violation of the statute may recover even though the statute does not in expressed terms provide for a civil action.

For this principle plaintiff cites us to the Restatement of Torts, § 286. This Section and its companion Sections, 287 and 288, present very clearly not only the rule for allowing recovery against one who has done a forbidden act, but also set forth the limitations on such recovery.[13]

■ It has been held repeatedly that one whose liability creating conduct is the violation of a statute which makes certain conduct a public offense does not, while engaged in such violation, become an insurer against all harm.[14] The situation is not like that of one who, engaged in a felony, unintentionally causes the death of a human being and is, nevertheless, subject to punishment as a murderer. As Dean Thayer pointed out a number of years ago "Criminal conduct which had

---

[11] Plus approximately $1,000,000 representing salaries, expenses and taxes which arose out of the retention of ownership of the mentioned securities.

[12] For doing any of the prohibited acts the Corporation may be subject to a penalty not to exceed $200,000.00. 49 Stat. 836, Act Aug. 26, 1935, 15 U.S.C.A. § 79z—3.

[13] "§ 286. Violations Creating Civil Liability.

"The violation of a legislative enactment by doing a prohibited act, or by failing to do a required act, makes the actor liable for an invasion of an interest of another if:

"(a) the intent of the enactment is exclusively or in part to protect an interest of the other as an individual; and

"(b) the interest invaded is one which the enactment is intended to protect; and,

"(c) where the enactment is intended to protect an interest from a particular hazard, the invasion of the interests results from that hazard; and,

"(d) the violation is a legal cause of the invasion, and the other has not so conducted himself as to disable himself from maintaining an action."

"§ 287. Effect of Provision for Penalty.

"The existence in a legislative enactment of a provision for the imposition of a penalty for doing a prohibited act or failing to do a required act is immaterial in determining whether the actor is subject to liability for an invasion of the interest of another; but if the penalty is payable to the person whose interest is invaded by the violation of the enactment, the recovery of the penalty is the exclusive remedy of such person, unless a contrary intention plainly appears."

"§ 288. Violations Creating No Civil Liability.

"The violation of a legislative enactment by doing a prohibited act or by failing to do a required act, does not make the actor liable for an invasion of an interest of another caused thereby, if the enactment is designed exclusively:

"(a) to protect the interests of the state or municipality, as such, or

"(b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public, or

"(c) to impose upon the actor the performance of a service which the state or municipality undertakes to give to the public, except where the actor is under a contract duty to perform a service which the state or municipality is under a legal duty to give."

[14] Gorris v. Scott, [1874] L.R. 9 Ex. 125; Dunbar v. Olivieri, 1935, 97 Colo. 381, 50 P.2d 64; see Morris, The Relation of Criminal Statutes to Tort Liability, 46 Harv.L.Rev. 453, 473 (1933); Lowndes, Civil Liability Created by Criminal Statute, 16 Minn.L.Rev. 361, 372 (1932).

658

no effect in causing the injury can no more be a ground of liability than non-causative negligence. In either case the wrongdoing is without legal significance as between the parties."[15] Our statute-breaker is civilly liable only if his law violation causes another harm of the sort which it was the presumed intention of the Legislature to protect against and that injury occurred in a way proscribed by the statute.

 We are unwilling to take the position urged by the defendants that the violation of the registration provisions of the statute will never bring about individual liability. Violation has been held liability creating in one situation.[16] It may or may not be in others. This case is decided on a narrower ground. When we examine the plaintiff's allegations and take his statement of facts as true we do not see how he has shown us any basis for recovery against the defendants, even conceding that a different set of facts might entitle him to recover. Section 1(b) of the Act expressly states that the interest of investors in the securities of holding companies are or may be adversely affected "when the growth and extension of holding companies bears no relation to economy of management and operation" but plaintiff has failed to allege that the $87,000,000 loss was due to that reason.[17] Plaintiff correctly states that the statute provides for registration. It is also correct to say that an unregistered company was forbidden to hold shares. Suppose the company had registered. It would still have held the shares. The plaintiff does not, nor could he, allege that the shares would necessarily have been disposed of had the company registered since the statute gave no mandate to a registered company that it must divest itself of the securities. The loss to shareholders in a declining market would have been just exactly the same whether the company was registered or whether the company was not registered. Plaintiff does not allege that the loss in value in United's securities was due to failure to register.[18] We do not see how, in the nature of things, there could be any possible connection between the mere failure to register and the decline in value in United's shares in other companies.[19] The only possible theory on which any such responsibility could be imposed is, we think, the proposition that the statute-violator becomes an insurer against loss of every kind. This, as already pointed out, is not the law.

██ We turn now to the allegation in the second cause of action. United held shares in a subsidiary called Mohawk Hudson Power Corporation. This company was consolidated with another company to form Niagara Hudson Power Corporation. The plan of consolidation gave to the type of shares of Mohawk which United held an option with regard to the type of shares in the new company which they could receive.

[15] See Thayer, Public Wrong and Private Action, 27 Harv.L.Rev. 317, 336 (1914). Dean Thayer gives a very apt illustration: "The driver of an automobile may at the moment of a collision be committing a crime by profanely swearing or carrying concealed weapons, or traveling without his license or without properly exposing the number of his car; but none of these things would render him liable to a wayfarer whom he injured without negligence." p. 336.

[16] The Second Circuit in a recent case held that there is a private right of action when acts are done in violation of § 4(a) (2) which prohibits an unregistered company from entering into operating contracts. Goldstein v. Groesbeck, 2 Cir., 1944, 142 F.2d 422, 154 A.L.R. 1285, certiorari denied, 1944, 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590; 30 Va. L.Rev. 668 (1944); see also Baird v. Franklin, 2 Cir., 1944, 141 F.2d 238, certiorari denied, 1944, 323 U.S. 757, 65 S. Ct. 38, 89 L.Ed. 591.

[17] Section 1(c) states that an unregulated holding company is injurious to investors, consumers and the general public. But plaintiff did not allege that the loss occurred because the holding company was unregulated. So far as the plaintiff states it, the loss was due to a general decline in the market.

[18] Plaintiff alleged that the loss was due to failure to sell—not failure to register. Amended complaint par. 37. The avowed purpose of § 4 was to force registration of holding companies. Sen.Rep. No. 621, 74th Cong. 1st Sess. 25 (1935); H.R.Rep. No. 1318, 74th Cong. 1st Sess. 11 (1935).

[19] See Beale, The Proximate Consequences of the Act, 33 Harv.L.Rev. 633, 637 (1920).

United's directors elected to receive common stock in the reorganized company in return for the second preferred shares of Mohawk which it turned in. Plaintiff says this turned out to be a bad guess and if a different option had been exercised or no option at all had been exercised, United would have been money ahead. It points out that §§ 4(a) (3) and 4(a) (4) forbid an unregistered holding company from selling or exchanging shares. Certainly this unregistered holding company did exchange shares when it exercised its option to trade in second preferred shares in the old company for common shares in the new company. Then the plaintiff says, too, that if the company had been registered it would have been subjected to regulations which would have brought into possible public notice the facts about this situation and the transaction, so that persons concerned could have made their wishes known with regard to the type of exchange they thought preferable. Likewise, the Securities and Exchange Commission would have had the information to exercise its judgment upon the propriety of the proposed action.

Plaintiff's theory is that if United had refrained from voting and exchanging as required by §§ 4(a) (6), 4(a) (3), and 4(a) (4) of the Act,[20] there would have been no loss since the consolidated preferred has maintained its market value and all accumulated dividends have been paid. But this we think is like the happy dreams of social success indulged in by the girl in the fable who carried the basket of eggs on her head. Plaintiff does not allege, and we do not know, what would have happened with regard to this exchange of shares had United been registered and all the facts which a registration requires had been brought out. Even if the plaintiff had alleged that the exchange would never

have taken place if United had been registered the complaint would still stop short of being legally sufficient unless it stated facts showing that the loss suffered happened in a way the statute was enacted to prevent. This he failed to do.[21] We do not think, therefore, that what plaintiff complains of was occasioned either by owning or exchanging unless, as discussed above, the statute-violator is to be held to complete insurer's liability.

Our conclusion is, with regard to plaintiff's first and second claimed causes of action, that we need not commit ourselves on the question whether violation of registration requirements may in some circumstances be made the foundation of assertion of private rights. We shall answer that question when a case compels us to do so. It is sufficient to say that such circumstances are not here presented by the plaintiff. We think that here, even if the violation of the statute could be made the basis of recovery, this plaintiff has not, even when we take all his allegations as true, brought himself into the area of recovery. We do not see how the Corporation's and therefore shareholders', loss through depreciation of securities or their exchange has been tied into the failure to register. The only possible basis for federal court jurisdiction is under a cause of action "created" by the Public Utility Holding Company Act of 1935. We think plaintiff, although he has presented his case with great skill, has failed to show any legal connection between the violation of the Act and the loss. This being so, we are not called upon to decide whether, if an action in federal court could be brought anywhere, the venue in this case was proper either as to living directors or personal representatives of deceased directors.

Affirmed.

---

[20] 49 Stat. 812, Act Aug. 26, 1935, 15 U.S.C.A. § 79d.

[21] Cf. Morrison v. Le Tourneau Co. of Georgia, 5 Cir., 1943, 138 F.2d 339.