**James D. MILAM, Jr., Plaintiff,**

v.

**SOL NEWMAN COMPANY, a corporation, et al., Defendants.**

**Civ. A. No. 10102.**

United States District Court
N. D. Alabama, S. D.

June 12, 1962.

Huie, Fernambucq & Stewart, Birmingham, Ala., for plaintiff.

Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendants.

LYNNE, Chief Judge.

Plaintiff seeks by this action to recover damages for personal injuries allegedly sustained in an automobile collision occurring in Alabama. Before this suit was instituted, the alleged driver of the other automobile, Philip R. Rosenfield, died, and the defendant Eva Rosenfield was appointed executrix of his estate by the Surrogate's Court in New York. Substituted service of process in the usual manner prescribed by the nonresident motorist statutes was therefore made upon Eva Rosenfield, as executrix of Philip R. Rosenfield, in accordance with the recently added [1] provisions of Ala.Code, Tit. 7, § 199,[2] which

1. Act No. 612, 1957 Ala.Acts, p. 878.

2. Ala.Code, Tit. 7, § 199 provides in part:
   "The operation by a nonresident of a motor vehicle on a public highway in this state, or the operation on a public highway in this state of a motor vehicle owned by any nonresident and being operated by such nonresident, or his, their or its agent, shall be deemed equivalent to an appointment by such nonresident of the secretary of state of the state of Alabama, or his successor in office, to be such nonresident's *or in case of the death of such nonresident his personal representative's* true and lawful agent or attorney upon whom may be served the summons and complaint in any action against such nonresident, *or if such nonresident has died against such nonresident's personal representative*, growing out of any accident or collision in which such nonresident may be involved while operating a motor vehicle on such public highway; or in which such motor vehicle may be involved while being operated on such public highway within the state of Alabama; and such operation shall be deemed a signification of such nonresident's agreement and equivalent to an appointment by such nonresident of the secretary of state of the state of Alabama, or his successor in office, to be such nonresident's, *or in case of the death of such nonresident his personal representative's* true and lawful agent or attorney upon who may be served all lawful process in any action or proceedings against such nonresident, *or if such nonresident has died against such nonresident's personal representative*, growing out of any accident or collision in which such nonresident may be involved while operating a motor vehicle on such public highway, or in which such motor vehicle may be involved while being op-

permit such service upon the personal representative of a deceased nonresident motorist. By motions to dismiss and to quash service, defendant Eva Rosenfield questions (1) the jurisdiction of this court as respects her, and (2) the constitutionality and validity otherwise of Section 199 insofar as it authorizes substituted service upon her.

These questions apparently have not been decided either by the courts of Alabama or by the Fifth Circuit Court of Appeals in respect to comparable statutes of other states. Other courts, however, have upheld overwhelmingly the validity of similar statutes against attacks urging their unconstitutionality under the Due Process Clause of the Fourteenth

Amendment and the termination by the nonresident motorist's death of the agency created in the appointment of the Secretary of State as process agent.[3]

In her first objection attacking this court's jurisdiction, the defendant can rely upon the doctrine, deeply ingrained in the common law of most states, that an executor or administrator cannot sue or be sued outside of the state conferring his authority.[4] The rule as it exists in Alabama is set out at length in Jefferson v. Beall, 117 Ala. 436, 23 So. 44 (1897), where the court refused to allow enforcement of a Georgia judgment against an Alabama executor on a debt owed by his decedent.[5]

erated on such public highway within the state of Alabama, so that any such summons and complaint against such nonresident, *or if such nonresident has died against such nonresident's personal representative*, which is so served shall be of the same legal force and effect as if personally served within the state of Alabama.

[Italicized portions added by 1957 amendment.]

3. See Annot., 18 A.L.R.2d 544 (1951). In only two decisions have statutes permitting service upon the foreign representative of a nonresident motorist been held invalid: Knoop v. Anderson, 71 F. Supp. 832 (N.D.Iowa 1947); Brooks v. National Bank of Topeka, 152 F.Supp. 36 (W.D.Mo.1957), rev'd, 251 F.2d 37 (8th Cir. 1958). The following decisions have upheld the validity of such statutes against the particular objections there raised: Brooks v. National Bank of Topeka, 251 F.Supp. 37 (8th Cir. 1958); Feinsinger v. Bard, 195 F.2d 45 (7th Cir. 1952); Guerra de Chapa v. Allen, 119 F.Supp. 129 (S.D.Tex.1954); Oviatt v. Garretson, 205 Ark. 792, 171 S.W.2d 287 (1943); Leighton v. Roper, 300 N.Y. 434, 91 N.E.2d 876, 18 A.L.R.2d 537 (1950); Plopa v. Du Pre, 327 Mich. 660, 42 N.W. 2d 777 (1950); State ex rel. Sullivan v. Cross, 314 S.W.2d 889 (Mo.1958); Tarczynski v. Chicago, M. St. P. & P. R. R., 261 Wis. 149, 52 N.W.2d 396; Toczko v. Armentano, 341 Mass. 474, 170 N.E.2d 703 (1960).

4. As stated by Restatement, Conflict of Laws § 512 (1934), the rule is as fol-

lows: "No action can be maintained against any administrator [or executor] outside the state of his appointment upon a claim against the estate of the decedent." This rule's corollary, which would indicate it is considered jurisdictional, is given thusly by § 514 of the Restatement: "A judgment against a foreign administrator in his representative capacity under a statute allowing a foreign administrator to be sued does not create an obligation which can be proved in any other state as a claim against the estate of the decedent."

An early statement of the rule by the United States Supreme Court upon which many of the state courts have relied is in Vaughan v. Northrup, 40 U.S. (15 Pet.) 1, 10 L.Ed. 639 (1841). Brown v. Fletcher's Estate, 210 U.S. 82, 28 S.Ct. 702, 52 L.Ed. 966 (1908), which sometimes is also relied upon, seems not to hold that *in personam* jurisdiction over the representative could not be obtained, but only that since the domiciliary representative was not served and purported jurisdiction of the Massachusetts court was based only on the decedent's written consent that the Massachusetts' judgment would be binding on his representative, jurisdiction simply had not in fact been obtained, so that the Massachusetts judgment was not enforcible against the domiciliary estate.

5. In 117 Ala. at 439–40, 23 So. at 44–45, the court remarks:

"[A] judgment rendered in a foreign jurisdiction against a domiciliary personal representative is void, whether objection

It therefore must first be determined, before examining considerations of due process, whether jurisdiction *can* be validly exercised over a foreign representative by a state court or a federal court with diversity jurisdiction. While the reasons for the rule of the foreign representative's immunity and the territorial limitation of his powers have been variously stated,[6] it seems to rest fundamentally on two related factors. The primary reason expressed is that the assumption of jurisdiction over a judgment against a foreign representative is considered an interference with the domiciliary state's orderly administration which would impinge upon the sovereignty of that state.[7] This is clearly indicated in the Alabama Supreme Court's opinion in Jefferson v. Beall, supra, where the problem is viewed as that of "power * * * over the subject-matter of the administration of assets * * * and to the capacity of the defendant to do any act to the prejudice of the domestic administration," so that, being a matter of sovereign concern, the immunity could not be relinquished by even the representative's consent. The second reason, upon which the decision in Knoop v. Anderson, supra, seems partially to rely, is that a suit against the fiduciary in his representative capacity is actually an action in rem against the estate requiring jurisdiction over the estate assets. As to the first reason, the question to be resolved is whether the present action against the fiduciary on a delictual claim arising from the decedent's acts in the forum state—as of course are all actions within the contemplation of the nonresident motorist statute—is really an interference with the domiciliary administration. And as to the second reason, the question is whether such an action is really of an *in rem* character.

■■ The answer to each, it is believed, is afforded by Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947), which was concerned not with

---

is or is not made to the exercise of jurisdiction by the foreign court * * *.

"The accepted theory of administration is that the right and liability is purely representative, and exists only by force of the official character, and so cannot pass beyond the jurisdiction which grants it, and reserves to itself full and exclusive authority over all the assets of the estate within its limits. * * *

* * * * *

"The objection thus goes to the power or jurisdiction of the court over the subject-matter of the administration of assets in a foreign state, in the control of foreign administrators, and to the capacity of the defendant to do any act to the prejudice of the domestic administration. Consent cannot give such jurisdiction, or extend the limited authority of the administration to extraterritorial acts resulting in judgments against the assets of the estate. The domestic representative has no authority to prosecute or defend suits in foreign jurisdictions, except by the permission and authority of the particular state, and only as to assets there located. * * * There was therefore no jurisdiction in the court of Georgia to entertain the suit resulting in the judgment against the appellees as executor and executrix, by and under the laws of

Alabama; and the judgment rendered in such suit is entirely void * * *."

6. See Note, "The Amenability to Suit of Foreign Executors and Administrators," 56 Colum.L.Rev. 915, 916–20 (1956). The reason sometimes expressed—e. g., Knoop v. Anderson, 71 F.Supp. 832 .(N.D.Iowa 1947); Greer v. Ferguson, 56 Ark. 324, 19 S.W. 966 (1892). Cf. Thorburn v. Gates, 225 F. 613 (S.D.N.Y.1915)— that the jurisdiction should not be assumed because other courts need not recognize the judgment, does not seem enlightening for the purposes of this case inasmuch as it seems necessarily to presuppose the absence of jurisdiction.

7. Restatement, Conflict of Laws § 512, comment *a* (1934), observes:
"The administrator holds the assets of the decedent which come into his possession subject to the directions of the court which appointed him, and is responsible only to that court. *For a court in another state to order payment from assets of the decedent in the hands of the foreign administrator would be an improper interference with the administration by the court of the first state.*" [Emphasis added.]
Comment *a* to Section 514 of the Restatement is similar.

jurisdiction but with the recognition to be given by an Illinois court with *in rem* jurisdiction of assets in liquidation to a Missouri judgment on a tort claim (malicious prosecution and false imprisonment) against the Illinois association after it had entered liquidation. In requiring full faith and credit to be accorded the Missouri judgment, the court remarked in 329 U.S. at 548–550, 67 S.Ct. at 454, 455:

> "We are not dealing here with any question of priority of claims against the property of the debtor. For in this proceeding petitioner is not seeking, nor is respondent denying him, anything other than the right to prove his claim in judgment form. * * * Nor do we have here a challenge to the possession of the liquidator either through an attempt to obtain a lien on the property or otherwise. As pointed out in Riehle v. Margolies, 279 U.S. 218, 224 [49 S.Ct. 310, 73 L.Ed. 669], the distribution of assets of a debtor among creditors ordinarily has a 'twofold aspect.' It deals 'directly with the property' when it fixes the time and manner of distribution. No one can obtain part of the assets or enforce a right to specific property in the possession of the liquidation court except upon application to it. But proof and allowance of claims are matters distinct from distribution. They do not 'deal directly with any of the property.' 'The latter function, which is spoken of as the liquidation of a claim, is strictly a proceeding *in personam.*' Id., [279 U.S.] p. 224, [49 S.Ct. at]. The establishment of the existence and amount of a claim against the debtor in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have. * * *

> "One line of cases holds that where a statutory liquidator or receiver is appointed, the court taking jurisdiction of the property draws unto itself exclusive control over the proof of all claims. [Footnote omitted.] *But the notion that such control over the proof of claims is necessary for the protection of the exclusive jurisdiction of the court over the property is a mistaken one.* As Justice Beach of the Supreme Court of Errors of Connecticut aptly said, 'The question is simply one of the admissibility and effect of evidence; and the obligation to receive a judgment in evidence is no more derogatory to the jurisdiction *in rem* than the obligation to receive in evidence a promissory note or other admissible evidence of debt.'" [Emphasis added.]

Riehle v. Margolies, supra, which was cited in Morris, is one of several Supreme Court decisions which, in harmonizing the concurrent jurisdiction of state and federal courts, have developed the rule that a federal or state court may take jurisdiction of a suit *in personam* against a receivership or other administration of assets over which the other has assumed prior jurisdiction *in rem,* although either court must refrain from assuming an *in rem* jurisdiction under the same circumstances.[8] The rationale, of course, is that jurisdiction *in personam* to determine only the validity and amount of a claim is considered to be in no way an interference with the other court's control of the *res.*[9] The same principle

---

8. See, e. g., United States v. Bank of New York & Trust Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936); Kline v. Burke Constr. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922); Penn General Cas. Co. v. Pennsylvania, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935).

See generally 1 Moore, Federal Practice Pars. 0.214 & 0.222 (2d ed. 1960).

9. See United States v. Bank of New York & Trust Co., supra 296 U.S. at 478, 56 S.Ct. 343; Markham v. Allen, 326 U.S. 490, 495, 66 S.Ct. 296, 90 L.Ed. 256 (1946).

and reasoning have been applied to permit federal courts to take jurisdiction of actions *in personam* against the executor or administrator of a decedent's estate.[10] No reason appears why the principles of Morris and the other cases mentioned above do not serve in the present instance both to dispel the notion that this proceeding, insofar as it pertains to Eva Rosenfield in her capacity as executrix, is strictly *in rem* and to remove all objections which form the basis for the rule of the foreign representative's immunity.[11] It is believed, therefore, that these decisions uphold the right of the Alabama courts and this court to assume jurisdiction *in personam* of a foreign personal representative to decide the validity and amount of a delictual claim against his decedent's estate.

■ But even should the assumption of jurisdiction by this court be deemed an interference with the domiciliary state's exclusive *in rem* jurisdiction, because of the great interest of Alabama in securing adequate redress to persons injured on her highways there should be, on the strength of the basic public policy considerations underlying Hess v. Pawloski, 274 U.S. 352, 356, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), little doubt that this is a proper exercise by Alabama of her police power.[12] For by the Hess decision, too, certain inroads were necessarily made on the traditionally exclusive jurisdiction of the state of the motorist's residence.[13]

■ The next question raised by defendant Eva Rosenfield's motions is whether the acquisition of jurisdiction, which it has thus been concluded that this court can assume without unconstitutionally transgressing upon the domiciliary state's sovereignty, through the particular mode of service prescribed by Section 199 is violative of the due process guaranteed by the Fourteenth Amendment. Past legislative attempts to subject foreign personal representatives to jurisdiction *in personam* usually have met with judicial opposition on this ground.[14] It is evident, though, that this concern over due process is because of the dual capacity of the personal representative.[15] Since in Thorburn, for example, the executor was served personally while unofficially in the forum state, it is particularly significant that Judge Hand cited along with Pennoyer the case of Goldey v. Morning News, 156 U.S. 518, 15 S.Ct. 559, 39 L.Ed. 517 (1895), which had held invalid an attempted service on an unqualified foreign corporation by serving its officer temporarily in the forum state in an unofficial capacity. Thorburn thus recognized that the foreign

---

10. Markham v. Allen, supra; Pufahl v. Estate of Parks, 299 U.S. 217, 57 S.Ct. 151, 81 L.Ed. 133 (1936).

11. Accord: Dictum of Judge Friendly in Iovino v. Waterson, 274 F.2d 41, 45 (2d Cir. 1959).

12. Plopa v. Du Pre, supra, 42 N.W.2d at 780; Brooks v. National Bank of Topeka, supra 251 F.Supp. at 41–42; Leighton v. Roper, supra, 91 N.E.2d at 881.

13. As one of "two well-established principles of public law respecting the jurisdiction of an independent State over persons and property," Pennoyer v. Neff, 95 U.S. (5 Otto) 714, 722–23, 24 L.Ed. 565 (1877), states that, "every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory," adding that, "The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others."

14. E. g., Thorburn v. Gates, 225 F. 613 (S.D.N.Y.1915); McMaster v. Gould, 240 N.Y. 379, 148 N.E. 556, 40 A.L.R. 792 (1925). Judge Learned Hand said in Thorburn v. Gates, supra, 225 F. at 616:

"Moreover, since the fourteenth amendment, the assumption of such a jurisdiction which inflicted with the exclusive authority of another state over a matter within its jurisdiction would itself be disregarded at the outset, at least in a federal court; nor would the executor be left to the assertion of the invalidity of such proceedings, when it was presented for execution or as evidence. Pennoyer v. Neff, * * * [supra]; Dewey v. Des Moines, 173 U.S. 193 [, 19 S.Ct. 379, 43 L.Ed. 665] * * *; Goldey v. Morning News, 156 U.S. 518 [15 S.Ct. 559, 39 L.Ed. 517] * * *."

15. See Knoop v. Anderson, supra.

representative simply was not present in his representative capacity so that there was no service upon him as a fiduciary.[16] But, as observed in Leighton v. Roper, supra, in 91 N.E.2d at 880, valid service may now be obtained by substituted service under the nonresident motorist statute; this objection is removed under the circumstances to which that statute is applicable since the fiduciary may be served in a *representative capacity* in accordance with the prescribed method. In other words, as respects due process there appears to be no reason why service under the nonresident motorist statute upon a foreign representative is any more objectionable than such service upon a foreign corporation. The representative, of course, has not personally consented to appointment of the Secretary of State; and if Section 199 purported to permit service upon him in a personal capacity so that a judgment also bound him personally, serious constitutional questions would arise. But the deceased nonresident has consented, and his fiduciary is served in only a representative capacity by virtue of his decedent's consent.

The final objection raised as to the validity of service on Eva Rosenfield as executrix under Section 199 is that the agency created by the statutory appointment of the Secretary of State as process agent was terminated by the nonresident motorist's death, and that Leighton v. Roper, supra, is distinguishable in this respect since the statute there considered provided expressly that the appointment was irrevocable. A short answer is that other courts, dealing with statutes without such a provision for irrevocability, have held the appointment nonetheless irrevocable and binding on the personal representative.[17] But the reasons given by the courts in rebuttal of this contention of agency termination provide the real answer. As stated in Leighton v. Roper, supra, 91 N.E.2d at 881, the effect of this argument "is to ignore not only the fact that it was an agency created, not for the benefit of the principal, but for the benefit of third persons, Restatement, Agency, §§ 120, 139, as well as the State, in the orderly regulation of its highways * * *." It may be added that, the doctrine of agency revocation by the principal's death being only a common-law rule, the abrogation of which is undeniably within the power of a state with legislative jurisdiction (which Alabama has, see Hess v. Pawloski, supra), it is incredible to suppose that the Alabama legislature intended that an agency expressly provided for in the event of a nonresident motorist's death would be terminated by that same event.

---

16. See also McMaster v. Gould, supra; Burrowes v. Goodman, 50 F.2d 92, 93 (2d Cir. 1931).

17. E. g., Brooks v. National Bank of Topeka, supra.