**Norman HOWARD, on behalf of himself and other Stockholders of Circle Wire & Cable Corporation, Plaintiff-Appellant,**

v.

**Sol FURST, Max B. Cohn, Isadore J. Furst, Sol Cohn, Richard C. Noel, Mortimer Hays, F. Dewey Everett, Cerro de Pasco Corporation, and Circle Wire & Cable Corporation, Defendants-Appellees.**

**No. 43, Docket 24131.**

United States Court of Appeals Second Circuit.

Argued Oct. 5, 1956.

Decided Nov. 13, 1956.

Lewis M. Dabney, Jr., New York City, for plaintiff-appellant.

Hays, Podell, Algase, Crum & Feuer, New York City (Mortimer Hays, Benjamin Algase, Mortimer Feuer and Martin Mensch, New York City, of counsel),

for defendants-appellees Sol Furst, Max B. Cohn, Isadore J. Furst, Sol Cohn, Richard C. Noel, Mortimer Hays and Circle Wire & Cable Corp.

Milbank, Tweed, Hope & Hadley, New York City (A. Donald MacKinnon, New York City, of counsel), for defendant-appellee F. Dewey Everett.

Alexander & Green, New York City (Donald M. Dunn, William R. McDermott and J. Kenneth Campbell, New York City, of counsel), for defendant-appellee Cerro de Pasco Corporation.

Before HAND, MEDINA and HINCKS, Circuit Judges.

MEDINA, Circuit Judge.

Plaintiff, suing "on behalf of himself and other stockholders of Circle Wire & Cable Corporation," in a derivative action for the benefit of Circle, appeals from a judgment dismissing his complaint for lack of jurisdiction over subject matter.

Diversity of citizenship is not alleged or claimed. The jurisdiction to entertain and determine the action is said to derive from Section 27 of the Securities Exchange Act of 1934, as amended 15 U.S. C.A. § 78aa.[1]

The pivotal factor, about which the allegations of the complaint revolve, is a contract of October 27, 1955, by the terms of which Circle agreed to sell and Cerro de Pasco Corporation agreed to buy all the assets, property and business of Circle for $20,250,000 and the as-

---

1. "§ 78aa. Jurisdiction of offenses and suits

"The district courts of the United States, the United States District Court for the District of Columbia, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 225 and 347 of Title 28. No costs shall be assessed for or against the Commission in any proceeding under this chapter brought by or against it in the Supreme Court or such other courts."

sumption of certain of Circle's liabilities and obligations. Under the applicable New York law, Stock Corporation Law, § 20, McKinney's Consol.Laws, c. 59, the sale required the consent of two-thirds of Circle's shareholders. A meeting for this purpose was scheduled for November 28, 1955, and on November 3, 1955, a notice of such meeting, and a proxy statement soliciting the votes of the stockholders in favor of the proposed sale, was mailed. This action was commenced on November 23, 1955; but no application was made for preliminary injunctive relief, and the sale was affirmed and consummated in due course.

At the time of the sale there were 750,-000 shares of Circle stock outstanding, 200,000 of which were sold to the public in 1951. The holdings of the officers and directors of Circle, who, with Cerro, are sued as defendants in this action, amounted to 60.68% of the total outstanding shares. The number of shares owned by plaintiff is not stated; it is merely alleged that at and prior to the sale and at the time of the commencement of the action, he was a stockholder of Circle.

The substance of plaintiff's claim on behalf of Circle is that the individual defendants "to advance their private interests" negotiated the sale for substantially less than the assets of Circle were reasonably worth, and that "such sale will constitute a waste of Circle's assets." It is alleged that the votes of the individual defendants, both as directors and as stockholders are "void and voidable," by reason "of their abuse of their fiduciary position as directors and as controlling stockholders." There are allegations that the suit is not collusive and that no demand had been made upon the defendant directors to refuse to proceed with the sale, or to correct the misstatements and omissions in the proxy statement, hereinafter referred to, or "to bring an action to cancel said contract, or otherwise abandon their plans," as such demand would be futile.

The proxy statement is alleged to be false and misleading in that it under-

stated the cost and present value of Circle's inventory and of its earnings, and by failing to disclose the private interests of the individual defendants, which are alleged in the complaint.

Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78n (a), provides:

"It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of any national securities exchange or otherwise to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered on any national securities exchange in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule X–14A–9 (17 Code Fed.Reg. § 240.14a–9), promulgated pursuant to Section 14(a), reads:

"No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting, or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

The prayer for relief in the complaint is that proxies given by stockholders of Circle be declared void, that certain of the individual defendants be enjoined from voting as stockholders either in person or by proxy in favor of the sale, that the contract be declared void, and,

if consummated *pendente lite*, be rescinded, and that, if restoration of the status quo be impossible, "Circle recover its damages from Cerro and from the individual defendants." In other words, appellant asserted a claim for an injunction against the sale, which, now that the sale has gone through, has become a claim for rescission or for the damages suffered by Circle, not by appellant.

As the case is said to be one "arising under" the laws of the United States, our first inquiry is addressed to appellant's contention that the statutory provisions above quoted create or give rise to a substantive civil right on behalf of Circle, which may be enforced in a derivative action by an individual stockholder. We reject this contention as unsound. We find nothing in the language of Section 14(a) or in the legislative history of the Securities Exchange Act of 1934 to warrant an inference that it was the intention of the Congress to create any rights whatever in a corporation whose stockholders may be solicited by proxy statements prepared in contravention of the statutory mandate.

Ambiguous or equivocal language would hardly be sufficient to support an innovation of such far reaching effects. Lauritzen v. Larsen, 345 U.S. 571, 73 S. Ct. 921, 97 L.Ed. 1254. Here the statute authorizes the formulation of rules and regulations "in the public interest or for the protection of investors." There is literally nothing to support the view that any substantive rights were created for the benefit of the corporation.

The Securities Exchange Act of 1934 is a comprehensive piece of legislation of wide scope. Significantly, where it was intended to create a right of action in favor of the issuer corporation, the statute makes express provision therefor, as in the case of Section 16(b), 15 U.S.C.A. § 78p(b), relative to short-swing profits. And see Birnbaum v. Newport Steel Corp., 2 Cir., 193 F.2d 461, certiorari denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356.

Much is said in the briefs of the respective parties on the subject of the rights of individual stockholders. But no such question is before us here. The complaint is unequivocally cast in terms of the rights of the corporation. And we find no basis for a construction of the complaint as purporting to assert individual rights of plaintiff, either alone, or as suggested by appellant, as the representative of a class. This is not a class suit, nor are any of the characteristic features of a class suit to be found in the complaint.

In Subin v. Goldsmith, 2 Cir., 224 F.2d 753, certiorari denied 350 U.S. 883, 76 S.Ct. 136, we left open the question of whether and to what extent Section 14 (a) may be construed as creating substantive rights in an individual stockholder. And we leave that question open now.

Appellant has cited certain decisions in cases said to be analogous, which we do not find persuasive, and we think it unnecessary to discuss them.

We turn to the subject of jurisdiction over subject matter. For, if appellant's claim is presented in a case "arising under" the laws of the United States, a dismissal for lack of jurisdiction is not warranted solely because the interpretation of the federal statute relied upon turns out to be wrong. Accordingly, we shall now examine the allegations of the complaint in order to determine whether, as found by the court below, appellant's claim is for violation of state-created rights, in no real or substantial sense dependent upon the provisions of the Securities Exchange Act of 1934 relative to proxy statements.

The controlling authority is Gully v. First National Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70, where Mr. Justice Cardozo restates what had long been settled law, to the effect that the federal right relied upon must be an essential element of plaintiff's claim, that it must be of such a character that it will be supported if the federal law is given one construction or effect, and defeated if it receives another. He

adds 299 U.S. at page 118, 57 S.Ct. at page 100:

"As in problems of causation, so here in the search for the underlying law. If we follow the ascent far enough, countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself with its circumambient restrictions upon legislative power. To set bounds to the pursuit, the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes that are necessary and those that are merely possible. We shall be lost in a maze if we put that compass by."

Applying this test it is clear to us that every essential element of appellant's case depends upon the common law and the statutes of the State of New York. If the individual defendants who controlled 60.68% of Circle's outstanding stock, in violation of their fiduciary duties as directors and officers of Circle, brought about a sale of Circle's assets for a grossly inadequate sum, all in furtherance of their personal and private interests, the case would be ripe for judgment for rescission of the sale or for damages, wholly irrespective of whether some or all of the individual defendants had participated in the formulation and sending out of a false or misleading proxy statement. The allegations with reference to the proxy statement constitute a mere excrescence or superfluity, tacked onto what are otherwise sufficient allegations of a claim for relief under New York law.

The controversy as to the interpretation to be given Section 14(a) is, therefore, not basic but collateral to appellant's case.

Appellant's further claim of pendent jurisdiction based upon copyright and trademark cases with unfair competition features, such as Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, and upon other cases, has little to commend it. The doctrine of pendent jurisdiction is only applicable when the fed-

eral court has jurisdiction of a substantial claim to begin with; and the policy is that of avoiding piecemeal litigation. See "Note on Pendent Jurisdiction," Hart & Wechsler, The Federal Courts and the Federal System, pp. 802-9. No such rule of policy has any applicability to the present case.

Affirmed.