J. John BROUK, James J. Mullen, Jr., W. Munro Roberts, Jr. et al., Appellants,

v.

MANAGED FUNDS, INCORPORATED, et al., Appellees.

No. 16566.

United States Court of Appeals Eighth Circuit.

Jan. 13, 1961.

Rehearing Denied March 6, 1961.

Forrest M. Hemker, St. Louis, Mo., for appellants. Greensfelder, Hemker & Wiese, St. Louis, Mo., were with him on the brief.

Robert S. Allen, St. Louis, Mo., for appellee. R. Walston Chubb, Robert S. Allen, Dominic Troiani, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., were on the brief.

Before WOODROUGH, VAN OOSTERHOUT, and MATTHES, Circuit Judges.

WOODROUGH, Circuit Judge.

These appeals are taken from an order of the District Court which denied motions made by appellants to dismiss for lack of jurisdiction of subject matter or person or both in two actions brought against appellants and others by Managed Funds Incorporated and by one Emanuel Josephson. The actions had been consolidated and the order determined that the motions to dismiss the complaints for want of jurisdiction in-

volved a controlling question of law upon which there is a substantial ground for difference of opinion and that an immediate appeal from the Court's order may materially advance the ultimate determination of the litigation. Pursuant to application to this Court to appeal under Section 1292(b), 28 U.S.C.A., the appeals were allowed to review the District Court's ruling on the motions to dismiss as related to the claims asserted against these appellants and the denial of appellants' motion to dismiss on jurisdictional grounds.

The plaintiff Managed Funds Incorporated, is a registered open end investment company within the purview of the Investment Company Act of 1940 (54 Stat. 789–847, 15 U.S.C.A. § 80a–1 et seq.) Prior to the commencement of the present actions a stop order proceeding was had against it before the Securities and Exchange Commission under Section 8(d) of the Securities Act, 15 U.S.C.A. § 77h(d), and a stop order was issued by the Commission upon extensive findings. In re Managed Funds Inc. Par. 76,662, C.C.H. Federal Securities Law Reporter, Current.

The general object and nature of the present consolidated actions is an accounting, injunction and recovery of money damages by Managed Funds for alleged violations of the Investment Company and the Investment Advisers Act of 1940 which are in general the same violations found by the Commission.

The Josephson case is a stockholders' derivative action prosecuted for and on behalf of Managed Funds, Inc., but in which Managed Funds, Inc., is named as a defendant. The Managed Funds case is a direct action by the corporation itself embracing the same general factual background.

Emanuel Josephson filed the derivative action in the United States District Court, District of Delaware. Managed Funds, Inc., filed its action in the United States District Court, Eastern District of Missouri.

Defendants, Hilton H. Slayton and Hovey E. Slayton, were officers and directors of the fund and owned or controlled defendant, Slayton Associates, Inc., the Funds' investment adviser and defendants, Slayton and Company, Inc. and Mutual Fund Distributors, Inc., which were engaged in the selling of Funds' shares. Defendant, Model, Roland & Stone, is a stock brokerage partnership composed of the individual defendants indicated. These appellants and defendants, Boas, Cunningham, Hicks, Jester, Shields and Stubbs are former members of the Board of Directors of Managed Funds, Inc.

The Josephson complaint rests jurisdiction on the claimed violation of the Investment Company and Investment Advisers Act of 1940, and rules of the Securities and Exchange Commission promulgated thereunder. Managed Funds' amended complaint rests jurisdiction on alleged violations of the Investment Company Act of 1940 and rules of the Securities and Exchange Commission promulgated pursuant to it.

Appellant, Jefferson J. Rebstock, and appellant, Earl R. Rice, are citizens and residents of the State of Louisiana. They appeared specially and by motions sought dismissal of the four counts of Funds' amended complaint for lack of jurisdiction of both subject matter and person. Appellants, W. Munro Roberts, Jr., J. John Brouk and James J. Mullen, Jr., are citizens and residents of the State of Missouri. They moved to dismiss for lack of jurisdiction of subject matter. Like motions were filed respecting the Josephson complaint and the adoption thereof by Protective Casualty Insurance Company. Similar motions were filed by all appellants on this appeal.

These appellants and some other directors are denominated by Fund in the amended complaint as "outside directors", that is, directors alleged to have had actual or constructive knowledge of the alleged wrongful acts of the Slaytons individually and the Slayton Companies and broker defendants.

The facts pleaded in Count I of Funds' amended complaint are substantially as follows:

That the plaintiff, Managed Funds, Incorporated, is a registered open end investment company under the Investment Company Act selling its shares to the general public through underwriters, distributors, dealers and salesmen. That Fund entered into a contract with Slayton Associates, Inc., whereby it became "Funds' Investment Adviser" for agreed compensation of ½ of 1% of the asset value of Funds' asset portfolio, consisting of shares of common stock of various companies. That in December of 1953, Slayton Associates, Inc. employed defendant, Jaquith, as investment counselor and manager of Funds' securities portfolio and delegated its duties as investment adviser to defendant, Jaquith; that Slayton Associates, Inc., agreed to pay Jaquith, $50,000.00 a year for five years beginning in December of 1953, and a minimum of $35,000.00 a year for the next succeeding five years, which payments were to be applied against brokerage commissions Jaquith or his designees would receive respecting Funds' brokerage business channeled to Jaquith; that Jaquith channeled Funds' business to the stock brokerage partnership of Model, Roland and Stone, defendant herein, of which Jaquith was a member, whereby such partnership received brokerage commissions of over $1,500,000.00; that Jaquith and Model, Roland and Stone paid $50,000.00 a year to defendants, Smith and Stubbs, for which no services were performed, it being averred that Stubbs is a former business associate of the Slaytons and an employee and representative of Model, Roland and Stone, a former director of the Fund; that defendant, Smith, is also an employee and representative of defendant, Model, Roland and Stone, and a brother-in-law of defendant, Hovey E. Slayton.

That Funds' announced policy in offering its shares as contained in reports and prospectuses filed with the Securities and Exchange Commission was to provide for capital growth and reasonable income consistent therewith by realized profits on the sale of portfolio securities and dividends; and to make quarterly distributions to its shareholder; that after the arrangement with Jaquith, it is averred this policy was not followed, and distribution to shareholders were made of a predetermined income to meet which it was required that capital gains be realized, thereby permitting defendants, Slayton and Company, Incorporated, and Mutual Fund Distributors, Incorporated to make greater commissions and profits from the sale of Funds' shares. This policy, it is averred, resulted in mismanagement, loss and damage to Funds' investment portfolio by increased brokerage commissions for purchase and sale of portfolio securities and greater payments to Jaquith by Slayton Associates, Inc.; that Fund was caused to place its brokerage business for the sale of portfolio securities with brokers who also sold Funds' shares, and with brokers who rendered services to Slayton Associates, Inc., and to Slayton and Company, Inc., and Mutual Fund Distributors, Inc., [seller and distributor of Funds' shares] to satisfy obligations of companies for services rendered to them.

By paragraph 21 of Count I of the Funds' amended petition, it is averred that:

"The defendants committed, or with actual or constructive knowledge, as hereinabove set forth, aided, abetted, acquiesced in or condoned, directly or indirectly, violations of the Investment Company Act of 1940."

by (a) operating the fund in the interest of directors, etc., rather than Funds' security holders, [15 U.S.C.A. § 80a–1(b)(2)]; (b) caused Fund to publish and circulate documents containing untrue statements or omitting material facts, [15 U.S.C.A. § 80a–33]; (c) caused Fund to deviate from a fundamental investment policy, [15 U.S.C.A. § 80a–13] and (d) that defendants, Model, Roland and Stone and Jaquith, acted as investment advisers without a written contract approved by the outstanding voting securities of Fund. [15 U.S.C.A. § 80a–15(a)].

Count II of Funds' amended complaint avers that the Court has jurisdiction of Count II because it is based on the same acts alleged in Count I of which the Court has jurisdiction under the Investment Company Act. And it is averred that Fund may be liable to purchasers of its shares by reason of the defendants having caused Fund to file false registration statement required by the Securities Act of 1933; that the Securities and Exchange Commission issued a stop order and that Funds' name and good will were damaged, and that Fund expended money for counsel fees and other expenses in connection with the Securities and Exchange proceedings.

Count III bases jurisdiction on the same grounds as Count II, and avers that Slaytons individually occupied a fiduciary relationship with Fund as Funds' President and Vice-President; that Model, Roland and Stone and Jaquith acted as investment advisers and therefore occupied a fiduciary relationship; that each of the other defendants had actual knowledge of the fiduciary relationship of the Slaytons to the Fund, and constructive knowledge of the fiduciary relationship of Model, Roland and Stone and Jaquith to the Fund; that the Slaytons and Model, Roland and Stone breached their fiduciary duties, committed waste and mismanaged Fund, and all except for the "outside directors" profited thereby; that all defendants, including the "outside directors" by reason of actual knowledge or constructive knowledge of the fiduciary relationships of the Slaytons and Model, Roland and Stone to Fund are liable for their acts.

Count IV adopts the allegations of Count I except paragraphs 20, 21 and 22 and paragraphs 3 through 6 of Count III, and avers a conspiracy between all defendants, except the "outside directors" who, it is averred, had actual or constructive knowledge and failed to do anything to prevent the actions of the other defendants, and are therefore liable to Fund.

Prayer of each of the Counts is for money damages, and for an accounting for profits as to all defendants.

The Josephson complaint recites the same basic facts as Count I of Funds' amended complaint and the same violations by Fund, and avers that "the wrongful acts herein described have been and continue to be committed by the defendants against Managed Funds in breach of legal and fiduciary obligations that are inherent by reason of the relationship of the parties". Josephson prays for an injunction in addition to an accounting and damages.

The District Court of Delaware transferred the Josephson case to the United States District Court, Eastern District of Missouri and the cases were consolidated.

Pursuant to an order entered by the District Court, the Protective Casualty Insurance Company, a corporation, was allowed to intervene as a party plaintiff in the Josephson case. The Protective Casualty Insurance Company, as an intervening party, adopted the complaint of Emanuel Josephson as its complaint.

On July 1, 1960, the District Court, by its order, denied each and all of the appellants' motions to dismiss for lack of jurisdiction of subject matter and/or person.

The points presented by appellants for reversal of the order are: 1. That the Investment Company Act of 1940 does not expressly or by implication create any statutory duty or liability respecting directors of an investment company, the violation of which gives rise to a cause of action by such investment company against these directors which is within the jurisdiction of the District Court of the United States. 2. Mere violations of the federal statute does not as a matter of general law create a case of which Federal Courts have jurisdiction and the theory of federal jurisdiction by implication has been rejected in security cases where corporations have sought to hold directors for claimed statutory violations and mismanagement or breach of duty. 3. The legislative history of the Investment Company Act of 1940 discloses a complete lack of congressional intent to create a body of federal law respecting

liability of directors of investment companies.

In support of the first point appellants recall that the Federal Courts are not courts of general jurisdiction but are courts of special or limited jurisdiction in that they have no jurisdiction except that conferred by the Constitution and laws of the United States, 54 Am.Jur. United States Courts Sec. 10, p. 671 and that:

> "A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends." Gully v. First National Bank, 299 U.S. 109, 114, 57 S.Ct. 96, 98, 81 L.Ed. 70.

Appellants point out that neither complaint here involved attempts to base jurisdiction on any federal statute other than the Investment Company Act and the Investment Advisers Act of 1940 and that the claim of jurisdiction to be sustained must fall within the category of a right created by the act of Congress whereby jurisdiction is conferred upon the Federal Courts without regard either to diversity of citizenship of the parties or the amount in controversy.

The Investment Company Act of 1940, 15 U.S.C.A. §§ 80a–1 to 80a–52, and the Investment Advisers Act of 1940, 15 U.S.C.A. §§ 80b–1 to 80b–21, are the fifth in a series of six Congressional enactments relating to securities. The Securities Act of 1933, 15 U.S.C.A. §§ 77a–77aa, the Securities Exchange Act of 1934, 15 U.S.C.A. §§ 78a to 78jj, the Public Utility Holding Company Act of 1935, 15 U.S.C.A. §§ 79a–79z and the Trust Indenture Act of 1939, 15 U.S.C.A. §§ 77aaa–77bbbb, each contain express provisions for private civil actions. See 77k, 77*l*, 78i(e), 78r, 79p, and 77www. Directors may be sued under 77k. Under 78p(b)

insiders profits may be recovered by an "issuer", or if it refuses to sue, through a security holder of an issuer in its name. There are provisions for limitations, joint liability and rights of contribution, §§ 77m and 77k. By contrast neither the Investment Company Act nor the Investment Advisers Act of 1940 contain any such provisions. The Investment Company and Advisers Acts neither make any definition of the duties of directors nor provide anywhere that a registered investment company may sue its directors.

Respecting jurisdiction of the District Courts, the Investment Company Act provides:

> "Sec. 80a–43. Jurisdiction of offenses and suits
>
> "The district courts of the United States and the United States courts of any territory or other place subject to the jurisdiction of the United States shall have jurisdiction of violations of this subchapter and sections 72(a) and 107(f) of Title 11, or the rules, regulations, or orders thereunder, and, concurrently with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this subchapter and sections 72(a) and 107(f) of Title 11 or the rules, regulations, or orders thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. A criminal proceeding based upon a violation of section 80a–33 of this title, or upon a failure to file a report or other document required to be filed under this subchapter and sections 72(a) and 107(f) of Title 11, may be brought in the district wherein the defendant is an inhabitant or maintains his principal office or place of business. Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this subchapter and sections 72

(a) and 107(f) of Title 11 or rules, regulations, or orders thereunder, may be brought in any such district or in the district wherein the defendant is an inhabitant or transacts business, and process in such cases may be served in any district of which the defendant is an inhabitant or transacts business or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 225 and 347 of Title 28 and section 7, as amended, of the Act entitled 'An Act to establish a court of appeals for the District of Columbia', approved February 9, 1893. No costs shall be assessed for or against the Commission in any proceeding under this subchapter and sections 72(a) and 107(f) of Title 11 brought by or against the Commission in any court. Aug. 22, 1940, c. 686, Title I, § 44, 54 Stat. 844."

The Advisers Act provides:

"Sec. 80b–14. Jurisdiction of offenses and suits

"The district courts of the United States and the United States courts of any territory or other place subject to the jurisdiction of the United States shall have jurisdiction of violations of this subchapter or the rules, regulations, or orders thereunder, and, concurrently with State and Territorial courts, of all suits in equity to enjoin any violation of this subchapter or the rules, regulations, or orders thereunder. Any criminal proceedings may be brought in the district wherein any suit or transaction constituting the violation occurred. Any suit or action to enjoin any violation of this subchapter or rules, regulations, or orders thereunder, may be brought in any such district or in the district wherein the defendant is an inhabitant or transacts business, and process in such cases may be served in any district of which the defendant is an inhabitant or transacts business or wherever the defendant may be found.

Judgments and decrees so rendered shall be subject to review as provided in sections 225 and 347 of Title 28, and section 7, as amended, of the Act entitled 'An Act to establish a court of appeals for the District of Columbia', approved February 9, 1893. No costs shall be assessed for or against the Commission in any proceeding under this subchapter brought by or against the Commission in any court. Aug. 22, 1940, c. 686, Title II, § 214, 54 Stat. 856."

The jurisdiction section of the 1933 Act, 15 U.S.C.A. § 77v, the Public Utility Holding Company Act, 15 U.S.C.A. § 79y, and the Trust Indenture Act, 15 U.S.C.A. § 77vvv, are substantially the same as 80a–43. The Exchange Act provides that the United States Courts have "exclusive jurisdiction" to enforce liabilities or duties created by that Act. 15 U.S.C.A. § 78aa.

The express wording of the Investment Company Act above is that criminal jurisdiction for violations is exclusively in the District Courts of the United States and civil jurisdiction is concurrently in State Courts and Federal Courts "of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this subchapter * * *". The Advisers Act confers jurisdiction of violations and suits to enjoin violations, and says nothing about duties or liabilities of directors.

The absence of specific language creating civil liability respecting private actions narrows the jurisdictional question presented by this appeal to whether or not directors' liability to registered investment companies which they serve has been created by implication.

Under some of the federal legislation relating to security transactions federal jurisdiction of private actions has been upheld by implying a right of action respecting contracts declared void by the statute and by implying a right of action for damages in tort for violation of the federal statute.

Appellants recognize that the doctrine is well supported that a cause of action within the federal jurisdiction exists by implication in the security field in suits brought by purchasers of securities against sellers or by sellers against purchasers on account of violations more particularly under the 1933 and 1934 Acts. The record of the development of the doctrine is shown in the Annotation to Fratt v. Robinson, 9 Cir., 1953, 203 F.2d 627, in 37 A.L.R.2d 649, and it appears that the jurisdiction has been implied first under the general provisions of the Exchange Act, the Holding Company Act, the Investment Company and Investment Advisers Act to the effect that contracts in violation of the Acts or rules thereunder are void. The applicable Investment Company Act provision is as follows:

"Section 80a–46. Validity of contracts

"(a) Any condition, stipulation, or provision binding any person to waive compliance with any provision of this subchapter and sections 72 (a) and 107(f) of Title 11 or with any rule, regulation, or order thereunder shall be void.

"(b) Every contract made in violation of any provision of this subchapter and sections 72(a) and 107 (f) of Title 11 or of any rule, regulation, or order thereunder, and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this subchapter and sections 72(a) and 107(f) of Title 11, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of

which the making or performance of such contract was in violation of any such provision, rule, regulation, or order. Aug. 22, 1940, c. 686, Title 11, § 47, 54 Stat. 845."

The second basis of liability, is "the common law tort doctrine of private action based on violation of a statute".

It is the position of appellants that the void contract theory of liability and the theory of tort liability based on violation of a federal statute has been rejected by the courts in situations where director liability to their corporation has been involved. Further, that the legislative history of the Acts here involved shows a complete absence of any legislative intent to create such private actions against directors by investment companies cognizable in the Federal Courts.

The appellants refer to the case of Kardon v. National Gypsum Co. et al., D.C. E.D.Pa., 1946, 69 F.Supp. 512, 513, as the root case containing judicial pronouncement of the two theories on which federal jurisdiction has been implied.

This was a fraud case under the Exchange Act of 1934 to recover damages against the National Gypsum Company and others for inducing plaintiffs to sell their stock in two corporations for less than true value. The court was ruling on motions of defendant to dismiss for lack of jurisdiction of person and failure to state a claim. By Rule X–10B–5 implementing 78j, the Security Exchange Commission made it unlawful for any person to employ deceptive devices in the purchase or sale of securities. The Court stated the question was whether the conduct complained of gave rise to a liability or involved a breach of duty created by the 1934 Act and then held:

"It is not, and cannot be, questioned that the complaint sets forth conduct on the part of the Slavins directly in violation of the provisions of Sec. 10(b) of the Act and of Rule X–10B–5 which implements it. It is also true that there is no provision in Sec. 10 or elsewhere expressly allowing civil suits by persons injured as a result of violation of Sec. 10

or of the Rule. However, 'the violation of a legislative enactment by doing a prohibited act, or by failing to do a required act, makes the actor liable for an invasion of an interest of another if; (a) the intent of the enactment is exclusively or in part to protect an interest of the other as an individual; and (b) the interest invaded is one which the enactment is intended to protect. * * *'. Restatement, Torts, Vol. 2, Sec. 286. This rule is more than merely a canon of statutory interpretation. The disregard of the command of a statute is a wrongful act and a tort."

The court also predicated liability on the void contract-theory saying:

"Apart from Sec. 10(b), I think that the action can also be grounded upon Sec. 29(b) of the Act which provides that contracts in violation of any provision of the Act shall be void. Here, unlike the point just discussed, the question is purely one of statutory construction. It seems to me that a statutory enactment that a contract of a certain kind shall be void almost necessarily implies a remedy in respect of it. The statute would be of little value unless a party to the contract could apply to the Courts to relieve himself of obligations under it or to escape its consequences. Beyond this, however, as pointed out by Judge Coxe in Geismar v. Bond & Goodwin, Inc., D.C., 40 F.Supp. 876, 878, the 1938 amendment which deals in part with actions 'maintained in reliance upon this subsection' clearly contemplates that Congress meant the original statute to be interpreted as providing for civil suits under it. And, as he further pointed out, such suits would include not only actions for rescission but also for money damages."

It is significant that in speaking of the void contract theory the court says a *party* may be relieved of contract obligations induced by violations, and appellants insist that the Security Act provisions voiding contracts in violation of the Acts can apply only where plaintiff and defendant in an action for relief under the Acts are in privity of contract or perhaps where plaintiff can work out a third party beneficiary relationship. None of appellants here are parties to the advisory contract between Associates and Fund or the contract between Associates Jaquith and Model, Roland and Stone. They say they can not be brought within the doctrine of Kardon v. National Gypsum Co. et al., supra. Furthermore, that the defendants in that action were the ones charged with violating the Acts was conceded in Kardon, whereas appellants contend the complaints here charged no statutory duties or liabilities respecting directors which these directors have violated.

### 2.

Under their second point appellants contend that the courts have rejected implication of federal jurisdiction in director liability cases. They cite Howard v. Furst, 2 Cir., 1956, 238 F.2d 790, 793 affirming D.C.S.D.N.Y., 140 F.Supp. 507. That was a derivative suit on behalf of Circle Wire & Cable Corporation against officers and directors of Circle who held over 60% of Circle's shares. There was no diversity. Federal jurisdiction was asserted under the Exchange Act of 1934, Section 78aa. The complaint alleged that Circle had an agreement to sell and a Cerro de Pasco Corporation an agreement to buy Circle's property and business for over twenty million dollars; that the individual defendants to advance their own private interest negotiated the sale for less than the value of the assets of Circle; that the sale would constitute a waste of Circle's assets; that the directors by virtue of their position and as controlling stockholders of Circle abused their fiduciary obligations. That a proxy statement of Circle's shareholders meeting to vote upon the sale was false and misleading, in that it understated the cost and value of Circle's inventory and its earnings and failed to disclose the private interests of the officers and directors of Circle. Section 78n(a) made

it unlawful to solicit proxies by use of the mails in contravention of rules of the S.E.C. and by Rule X–14A–9 the S.E.C. had proscribed false or misleading material in proxy statements. The prayer for relief was to declare the proxies void; to enjoin certain individual defendants from voting, to declare the sale contract void, and to rescind it and restore the status quo and alternatively, if this be impossible, that Circle recover damages from Cerro and the individual defendants directors of Circle. In summing up the complaint the Court said: "In other words, appellant asserted a claim for an injunction against the sale, which, now that the sale has gone through, has become a claim for rescission or for the damages suffered by Circle, not by appellant". The Court sustained the action of the District Court, S.D.N.Y., 140 F.Supp. 507, dismissing the complaint for lack of jurisdiction of the subject matter, Circuit Judges Hand, Medina, and Hincks, sitting. The Court said:

"As the case is said to be one 'arising under' the laws of the United States, our first inquiry is addressed to appellant's contention that the statutory provisions above quoted create or give rise to a substantive civil right on behalf of Circle, which may be enforced in a derivative action by an individual stockholder. We reject this contention as unsound. We find nothing in the language of Section 14(a) or in the legislative history of the Securities Exchange Act of 1934 to warrant an inference that it was the intention of the Congress to create any rights whatever in a corporation whose stockholders may be solicited by proxy statements prepared in contravention of the statutory mandate."

The Court pointed out that where the 1934 Act created a corporate action for insider profits this was done by an express provision, 15 U.S.C.A. § 78p(b). Applying the federal right test of the Gully case, supra, [299 U.S. 109, 57 S. Ct. 96, 81 L.Ed. 70], the Court said:

"Applying this test it is clear to us that every essential element of appellant's case depends upon the common law and the statutes of the State of New York. If the individual defendants who controlled 60.68% of Circle's outstanding stock, in violation of their fiduciary duties as directors and officers of Circle, brought about a sale of Circle's assets for a grossly inadequate sum, all in furtherance of their personal and private interests, the case would be ripe for judgment for rescission of the sale or for damages, wholly irrespective of whether some or all of the individual defendants had participated in the formulation and sending out of a false or misleading proxy statement. The allegations with reference to the proxy statement constitute a mere excrescence or superfluity, tacked onto what are otherwise sufficient allegations of a claim for relief under New York law."

Appellants also cite Downing v. Howard, 162 F.2d 654, 655, 3 Cir., 1947, affirming D.C.1947, 68 F.Supp. 6. The nature of the action is described by the Court as follows:

"Plaintiff is the owner of shares of United Corporation (of Delaware), hereafter called United. He brought this action in the United States District Court for the District of Delaware on behalf of himself, other shareholders of United, and the Corporation against individuals or, in some instances, their personal representatives, who had been directors of United and certain other persons alleged by plaintiff to have conspired with the directors to the detriment of the Corporation. Most of the individual defendants are neither residents of Delaware nor engaged in business there. Plaintiff, however, says that he is properly in the federal court under Sec. 25 of the Public Utility Holding Company Act

of 1935. He concedes that unless he has stated a cause of action 'created' by that statute his action in the District Court of Delaware will not lie."

By the third count it was claimed the directors failed to file with the S.E.C. a plan of reorganization. The Court held:

"The fatal obstacle to the plaintiff's complaint on this score is that the legislation does not require the company to furnish a plan. A cause of action can hardly be based upon disobedience of the statute when the statute does not require the act, the non-doing of which is complained of by the plaintiff. Plaintiff's complaint, therefore, as to this cause of action stops at this point so far as it is predicated upon liability under the federal statute."

By the first count it was alleged the directors failed to register United and that while United was unregistered it held securities which depreciated $87,-000,000.00. The Court held there was no duty on a registered company to sell its securities, hence failure to register had no legal connection with the loss. Count two, also based on failure to register averred that an option exercised by directors which turned out to be a bad guess would not have happened if United was registered. The Court said:

"Plaintiff's theory is that if United had refrained from voting and exchanging as required by §§ 4(a) (6), 4(a) (3), and 4(a) (4) of the Act, there would have been no loss since the consolidated preferred has maintained its market value and all accumulated dividends have been paid * * *. Plaintiff does not allege, and we do not know, what would have happened with regard to this exchange of shares had United been registered and all the facts which a registration requires had been brought out. Even if the plaintiff had alleged that the exchange would never have taken place if United had been registered the complaint would still stop short of being legally sufficient unless it stated facts showing that the loss suffered happened in a way the statute was enacted to prevent. This he failed to do. We do not think, therefore, that what plaintiff complains of was occasioned either by owning or exchanging unless, as discussed above, the statute-violator is to be held to complete insurer's liability."

District Judge Leahy in dismissing the Downing case below summarized his views as follows:

"Clearly, then, the suit at bar is not a 'suit in equity * * * brought to enforce any liability or duty created' by the Act. Absent other jurisdictional elements, a minority stockholder may not resort to the federal courts on simple allegations that directors and officers, with other co-conspirators, have violated federal statutes—such as antitrust laws and the Interstate Commerce Act, 49 U.S.C.A. Sec. 1 et seq. —in addition to committing breaches of fiduciary duty." 68 F.Supp. at page 10.

Birnbaum v. Newport Steel Corporation, 2 Cir., 1951, 193 F.2d 461, 463, is also cited. There the Second Circuit had before it a suit brought on behalf of the Newport Steel Company by shareholders alleging jurisdiction under the Securities Exchange Act of 1934, 15 U.S.C.A. § 78aa. Violation of fiduciary obligations by directors was pleaded in selling their stock in Newport and making fraudulent reports to Newport's stockholders. It was claimed S.E.C. Rule X–10B–5 was violated. The Court held that the claimed violations had no relation to breach of fiduciary duties by corporate insiders which resulted in fraud upon stockholders who were neither buyers nor sellers (the protected class under the 1933 and 1934 Acts).

The Court rejected plaintiff's contention that the rule supplemented the common law liability of those who abuse the trust of their corporate positions and created a federal case and said:

"But the appellants argue that such an interpretation of the Rule is too narrow to carry out the broad purpose of the Act to protect investors 'from exploitation by corporate insiders'. * * * We do not doubt that Congress was at least partially motivated by such a purpose in enacting the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq. However, the precise question here is whether Section 10(b) of the Act and the Commission's Rule X–10B–5 were the means chosen to further that end, and we are of the opinion that the legislative 'history' and 'purpose' quoted by appellants are not persuasive that they were. When Congress intended to protect the stockholders of a corporation against a breach of fiduciary duty by corporate insiders, it left no doubt as to its meaning.[1] Thus Section 16(b) of the Act of 1934, 15 U.S.C.A. § 78p(b), expressly gave the corporate issuer or its stockholders a right of action against corporate insiders using their position to profit in the sale or exchange of corporate securities. The absence of a similar provision in Section 10(b) strengthens the conclusion that that section was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X–10B–5 extended protection only to the defrauded purchaser or seller. Since the complaint failed to allege that any of the plaintiffs fell within either class, the judgment of the district court was correct and is accordingly affirmed."

The appellants then cite non-security cases illustrating lack of federal jurisdiction when none is legislatively conferred as follows: Meyer et al. v. Kansas City Southern Railway Company, 2 Cir., 1936, 84 F.2d 411, stockholders derivative action for conspiracy against railroads and directors alleged violation of antitrust laws; Jacobson v. New York, N. H. & H. R. Co., 1 Cir., 1953, 206 F.2d 153, violation of Safety Appliance Acts, 45 U.S.C.A. § 1 et seq.; Consolidated Freightways v. United Truck Lines, 9 Cir., 1954, 216 F.2d 543, violation of Motor Carrier Act, 49 U.S.C.A. § 301 et seq.; Miller v. Long, 4 Cir., 1945, 152 F.2d 196, violation of National Housing Act, 12 U.S.C.A. § 1701 et seq.; Republic Pictures Corp. v. Security First National Bank, 9 Cir., 1952, 197 F.2d 767, case involving mortgage on a copyright; State Automobile Ins. Ass'n v. Parry, 8 Cir., 1941, 123 F.2d 243; Note: 14 A.L.R. 2d 992—What actions arise under the laws and treaties of the United States so as to vest jurisdiction of Federal Courts.

3.

As to the lack of congressional intent to create a body of federal law respecting liability of directors of investment companies. Such review as we have been able to make of the legislative history has afforded little assistance either in justifying or refuting the implication of a private right of suit such as claimed here. Senate and House Committees reports are devoid of clear reference to civil liability except with respect to provisions expressly imposing it. We are cited to the analysis of the Investment Company Act of 1940 in 50 Yale L.J. 441, 446, that "the original draft of the section" (now 15 U.S.C.A. § 80a–9) "which required all investment company officers and direc-

[1.] We observe that when Congress intended to create a federal case of director liability it made its meaning clear. The National Banking Act provides that directors of a National Bank who knowingly permit any of the officers, agents or servants of the association to violate any provisions of the Act, every director

who participated in or assented to the same is to be held liable in his personal and individual capacity for all damages which the association, its shareholder or any other person shall have sustained in consequence of such violation. 12 U.S.C.A. § 93.

tors to register as individuals with the S.E.C. and become subject to such disqualification as that body should propose drew a storm of protest from the industry." As passed, the director registration requirement was deleted. The original bill had further provided that if any person registered under the Act was guilty of gross misconduct or gross abuse of trust he would be guilty of a crime. This provision was omitted from the Act. The note in the journal continued by saying, that: "It was suggested during the hearings on the original bill that this whole problem" (managerial responsibility) "could be solved most expeditiously by declaring investment company managements to be trustees in fact with trustee obligations to their stockholders.". This proposal, however, which would have involved drastic managerial responsibility, was rejected except to the extent that "gross abuse of trust" was made a ground for restraining the guilty party from further connection with the industry. The "gross abuse" section referred to is 15 U.S.C.A. § 80a–35 and the Securities and Exchange Commission is the one there authorized to bring the action.

Congress did refrain from including in the Acts any control or regulation or expansion of the common law duties of directors of investment companies, and the failure to provide any private civil remedies or for joint and several liability or contribution or statutes of limitation such as are found in the 1933 and 1934 Acts indicates that the omission was deliberate. At common law directors are liable to exercise due care, and to render them liable by implication on account of violations of the Acts by others would be a drastic innovation.

Senator Lodge of Massachusetts stated in the Senate on June 21, 1940, in urging the passage of the present Act:

"It so happens that the investment trust business is one which very largely had its origin in Boston and I happen to know a great many people connected with this industry. * *

This bill, as the Senator from New York has said, was agreed upon after very painstaking and careful study, in which really almost a miracle occurred, in that all the various elements in the industry were able to get together and organize themselves, and present a common basis for studying the question, and as the result of that effort an agreement which is embodied in this bill was reached between those engaged in the industry and the members of the S.E.C. I submit that that is a very unusual and very beneficial occurrence—."

It seems improbable that there would have been such unanimity for the passage of the Act if it had been thought to impose any such per se liability on directors as is claimed by plaintiffs here. The failure to provide for any private civil remedies or for joint and several liability of directors and persons who commit or contribute to violations or for statutes of limitations or for conditions is persuasive that the omission was deliberate. Certainly, the Courts will imply a liability only to implement a manifest legislative intent. The enactments as they stand do not justify implications that jurisdiction was intended to be conferred.

The appellees in support of the jurisdiction and the ruling appealed from contend that the facts alleged in the complaints state a claim upon which the Investment Company Act of 1940 provides a remedy to Managed Funds and against appellants in the Federal District Court. They have cited and relied on the following provisions of the Act and texts and decisions: Aldred Inv. Trust et al. v. Securities and Exchange Commission, 1 Cir., 1945, 151 F.2d 254; Alleghany Corporation v. Breswick & Co., 1957, 353 U.S. 151, 77 S.Ct. 763, 1 L.Ed.2d 726; Baird v. Franklin, 2 Cir., 1944, 141 F.2d 238; Bell v. Hood, 1945, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939; Birmbaum v. Newport Steel, 2 Cir., 1951, 193 F.2d 461; Brandt v. Renfield, 8 Cir., 1960, 278 F.2d 904; Breswick & Co. v. United

States, D.C.S.D.N.Y.1955, 134 F.Supp. 133; D.C.1956, 138 F.Supp. 123; Breswick & Co. v. Briggs, D.C.1955, 135 F. Supp. 397; Cogan v. Johnson, D.C.S.D. N.Y.1958, 162 F.Supp. 907; Collings v. Bush Manufacturing Co., D.C.S.D.N.Y. 1956, 19 F.R.D. 297; Downing v. Howard, D.C.Del.1946, 68 F.Supp. 6; 3 Cir., 1947, 162 F.2d 654; Errion v. Connell, 9 Cir., 1956, 236 F.2d 447; Fielding v. Allen, 2 Cir., 1950, 181 F.2d 163; Fischman v. Raytheon Mfg. Co., 2 Cir., 1951, 188 F.2d 783; Fratt v. Robinson, 9 Cir., 1953, 203 F.2d 627, 37 A.L.R.2d 636; Goldstein v. Groesbeck, 2 Cir., 1944, 142 F.2d 422, 154 A.L.R. 1285; Gully v. First National Bank in Meredian, 1936, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Hawkins v. Merrill Lynch, Pierce, Fenner & Beanse, D.C.W.D.Ark.1949, 85 F.Supp. 104; Hooper v. Mountain States Securities Corporation, 5 Cir., 282 F.2d 195; Howard v. Furst, 2 Cir., 1956, 238 F.2d 790; Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; R. H. Johnson & Co. v. S. E. C., 2 Cir., 1952, 198 F.2d 690; Jung v. K & D Mining Co., 7 Cir., 1958, 260 F.2d 607; Kardon v. National Gypsum Co., D.C.E.D.Pa.1946, 69 F. Supp. 512; D.C.1947, 73 F.Supp. 798; In re Managed Funds, Incorporated, Par. 76,662, C.C.H. Federal Securities Law Reporter, Current. Schwartz v. Bowman, D.C.S.D.N.Y.1957, 156 F.Supp. 361; Schwartz v. Eaton, 2 Cir., 1959, 264 F.2d 195; Slavin v. Germantown Fire Ins. Co., 3 Cir., 1949, 174 F.2d 799; Sparks v. England, 8 Cir., 1940, 113 F.2d 579; Stadia Oil & Uranium Co. v. Wheelis, 10 Cir., 1957, 251 F.2d 269; Stella v. Kaiser, D.C.S.D.N.Y.1948, 82 F.Supp. 301; Taussig v. Wellington Fund, Inc., D.C.Del.1960, 187 F.Supp. 179.

Statutes Cited: 79j (Rule X–10B–5), 78aa, 78p of Title 15, U.S.C.A., 79y, 79z of Title 15, U.S.C.A.; 80a–1(b) of Title 15, U.S.C.A.; 80a–2(a) (19) of Title 15, U.S.C.A.; 80a–8(b) of Title 15, U.S.C.A.; 80a–10 of Title 15, U.S.C.A.; 80a–13(a) (3) of Title 15, U.S.C.A.; 80a–15 of Title 15, U.S.C.A.; 80a–16 of Title 15, U.S. C.A.; 80a–33 of Title 15, U.S.C.A.; 80a–43 of Title 15, U.S.C.A.; 80a–46(b) of Title 15, U.S.C.A.; 80a–47 of Title 15, U.S.C.A.

Rules Cited: Rule 8(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

Texts Cited: Congressional Record, 1940, P. 10074; Green, George Washington Law Review, Vol. 28; Jaretski, 26 W.U.L.Q. 303; 61 Harvard Law Review 858; Report of Hearing of H.B. 10065, Subcommittee of Committee of Interstate and Foreign Commerce (76th Congress, 3rd Session); Restatement of the Law of Torts, Section 286; Senate Report No. 1775, 76th Congress, 3rd Session June 6, 1940.

In the first place, the appellees stress the decision in the Kardon case, supra, and the fact that the Court there found federal jurisdiction by implication both because the defendant had violated a legislative enactment causing damage to plaintiff and because the statute declared that the contract so obtained in violation "shall be void". [69 F.Supp. 514]. We do not express disagreement in any respect with the Kardon decision and others in accord with it. In Kardon the party damaged by a contract obtained in violation of a federal law, which contract the law made void, was allowed to sue in federal court the party who offended and profited. But we do not hold the situation here to be analogous.

Goldstein v. Groesbeck, 2 Cir., 1944, 142 F.2d 422, 426, involved a void contract under the Holding Company Act. Defendant, Electric Bond & Share, was the top holding company and through American Power & Light it controlled four power companies. It had construction contracts with the power companies and caused the contracts to be taken over by corporations organized by it. By the Act it was unlawful for an unregistered holding company to enter into construction or service contracts with public utilities. Goldstein brought the action as a shareholder of American derivatively for American and the controlled power companies to compel an accounting for profits gained by the construction and service corporations and certain of their officers and directors. The court decid-

ed that but for the Act the payment under the contracts would have been lawful, therefore, "the words 'any liability or duty' are clearly broad enough to include any breaches of duty causing injury or loss to private persons." The void contract theory is enunciated as follows:

"As we have seen, the Act makes it unlawful for unregistered holding companies to enter 'directly or indirectly' into service or construction contracts * * *

"Violation being thus established, § 26(b), 15 U.S.C.A. § 79z(b), in express terms declares the contracts void. It should follow that the operating companies are entitled to a refund, for no other result can fulfill the expressed purpose of the Act of protecting subsidiaries from the overreachings of holding companies. Thus, the statutory declaration of the necessity for control of holding companies in § 1(b) (2), 15 U.S.C.A. § 79a(b), (2), states, inter alia, that the national public interest is adversely affected 'when subsidiary public utility companies are subjected to excessive charges for services.' The three specific sanctions stated in the Act—injunction, § 18(f), 15 U.S. C.A. § 79r(f); criminal punishment, § 29, 15 U.S.C.A. § 79z–3; and the negative relief of § 26(b), declaring the contracts void—do not in terms place the defrauded operating company in status quo; and § 26 is incomplete, if not ineffective, unless it is considered to authorize recovery by the operating companies * * *

" * * * Furthermore, the analogy of the Securities Exchange Act is again useful. Private enforcement of § 29(b) of that statute has been permitted, Geismar v. Bond & Goodwin, Inc., supra [D.C., 40 F. Supp. 876], while we have recently upheld broadly the private rights of action impliedly granted by the Securities Exchange Act, Baird v. Franklin, 2 Cir., 141 F.2d 238; and cf. Charles Hughes & Co. v. S. E. C.,

2 Cir., 139 F.2d 434, certiorari denied [321 U.S. 786], 64 S.Ct. 781, [88 L.Ed. 1077]. As we have pointed out in those cases, we think a denial of a private right of action to those for whose ultimate protection the legislation is intended leaves legislation highly publicized as in the public interest in fact sadly wanting, and even delusive, to that end."

The case did not involve asserted liability of the directors of Electric Bond & Share to it for causing it, through its controlled construction and service corporation, to enter into the void contracts with the power companies. Goldstein sought an accounting for "profits" made by the directors and the construction and service companies illegally contracting with the operating companies. Electric Bond & Share was a party because it acted through its controlled construction and service corporation. In other words, this was a suit for recovery of the consideration paid by the operating companies under the void contract. The Court carefully reserves the question of whether the recovery would be for the entire consideration or the excess thereof over the reasonable value of the services rendered. The case illustrates that jurisdiction implied under the void contract theory requires privity and does not hold that directors may be held liable to account to the corporation for return of a consideration which they did not receive.

Referring to Geismar v. Bond & Goodwin, Inc., supra, the Court there said:

"A useful analogy in favor of this interpretation [of implied liability] can be found in § 29 of the Securities Exchange Act * * * which is virtually identical with § 26 of the Utility Act, for it is now clear from the 1938 amendment to § 29, 52 Stat. 1076, that Congress intended a right of recovery thereunder."

The section referred to is 15 U.S.C.A. § 78cc(b) and the 1938 amendment is a provision added to the void contract section of the Exchange Act of 1934 reading:

"Provided, (A) That no contract shall be void by reason of this subsection because of any violation of any rule or regulation prescribed pursuant to paragraph (2) or (3) of subsection (c) of Section 78o of this title, and (B) that no contract shall be deemed to be void by reason of this subsection in any action maintained in reliance upon this subsection, by any person to or for whom any broker or dealer sells, or buying from or for whom any broker or dealer purchases, a security in violation of any rule or regulation prescribed pursuant to paragraph (1) of subsection (c) of section 78o of this title, unless such action is brought within one year after the discovery that such sale or purchase involves such violation and within three years after such violation."

Appellees argue that as the corporation acts through its officers and directors such parties in control must be held liable because if the company violates the acts they directly or indirectly cause the violation. They contend that the directors should be held liable under Section 80a–47 which provides:

"(a) It shall be unlawful for any person, directly or indirectly, to cause to be done any act or thing through or by means of any other person which it would be unlawful for such person to do under the provisions of this subchapter and sections 72(a) and 107(f) of Title 11 or any rule, regulation, or order thereunder.

"(b) It shall be unlawful for any person without just cause to hinder, delay, or obstruct the making, filing, or keeping of any information, document, report, record, or account required to be made, filed, or kept under any provision of this subchapter and sections 72(a) and 107(f) of Title 11 or any rule, regulation, or order thereunder. Aug. 22, 1940, c. 686, Title 1, § 48, 54 Stat. 846."

Section 80a–33(b) provides:

"(a) It shall be unlawful for any person, except as permitted by rule, regulation, or order of the Commission, willfully to destroy, mutilate, or alter any account, book, or other document the preservation of which has been required pursuant to section 80a–30(a) or 80a–31(c) of this title.

"(b) It shall be unlawful for any person to make any untrue statement of a material fact in any registration statement, application, report, account, record, or other document filed or transmitted pursuant to this subchapter and sections 72(a) and 107(f) of Title 11 or the keeping of which is required pursuant to section 80a–30(a) of this title. It shall be unlawful for any person so filing, transmitting, or keeping any such document to omit to state therein any fact necessary in order to prevent the statements made therein, in the light of the circumstances under which they were made, from being materially misleading. For the purposes of this subsection, any part of any such document which is signed or certified by an accountant or auditor in his capacity as such shall be deemed to be made, filed, transmitted, or kept by such accountant or auditor, as well as by the person filing, transmitting, or keeping the complete document. Aug. 22, 1940, c. 686, Title 1, § 34, 54 Stat. 840."

Stadia Oil & Uranium Co. v. Wheelis, 10 Cir., 1957, 251 F.2d 269 is cited in support. There purchasers of securities which were sold in violation of the 1933 Act sued one Rankin, a Vice-President and director of the corporation, among others, and he denied participation. It was a jury question whether he was in "control" within the meaning of section 77a of the Act and under proper instructions the jury's verdict that he was in such control was sustained.

In Hawkins v. Merrill Lynch et al., D.C.W.D.Ark.1949, 85 F.Supp. 104, 123

also cited to the same point, it was held that where the defendant was sued and held liable for sales of securities in violation of the Exchange Act of 1934 directed another in such a manner as to violate the rights secured by the legislation "there exists that degree of control necessary to create liability under section 78t(a)."

R. H. Johnson & Co. v. Securities & Exchange Commission, 2 Cir., 1952, 198 F.2d 690 also cited to the point. But we do not find that either of these three cases lend substantial support to appellees.

The Holding Company Act provision 79z–1 is the same as the Investment Act, § 80a–47. The Securities Act of 1933 has no comparable section. The Exchange Act of 1934 does have a comparable section 78t(b). Both the 1933 and 1934 Acts have sections making a person controlling any person who is liable under these Acts, jointly and severally liable with the controlled person (77o and 78t). The Investment Company Act has no such provision nor does the Holding Company Act. With respect to controlling persons, the Investment Company Act indicates by its definition of "control" that the powers of control which inure to directors solely as the result of their official position in the company are not included in the word "control" used in respect to provisions in the Act. The definition reads:

> " 'Control' means the power to exercise a controlling influence over the management or policies of a company, unless such power is solely the result of an official position with such company." § 80a–2.

Appellants insist and we agree that this wording of the Act shows that it was the legislative intent to refrain from entering the field of director responsibility. There is a sense in which it can be said, as appellees have argued, that directors control the various corporate actions of management on policy, but by this provision directors acting in their official capacity are excluded from being held liable on that theory. As was stated in Downing v. Howard, 68 F.Supp. 6, 10, "At best, the alleged violations were violations by United. There is no provision in the Act imposing a duty or liability on officers or directors, as such, or upon outsiders acting in concert with officers and directors."

Appellees cite Hooper v. Mountain States Securities Corporation, 5 Cir., 1960, 282 F.2d 195, which was brought under the 1934 Act to recover on account of a fraudulent scheme concerted by defendants to have shares of stock issued for worthless property in order that the individuals could divide up the stock for their own use and get the benefits of their fraud. The court held the transactions to be within the purchase and sale provisions of the 1934 Act and the regulation. But on its facts the case does not have a bearing on the problem here in issue.

In Taussig v. Wellington Fund, Inc., D.C.Del.1960, 187 F.Supp. 179, the controversy was between two investment companies both employing the name Wellington, which name was also used by the underwriters and advisors. The Court held the first investment company had the right to use the name Wellington and that use by the other was enjoined. Several provisions of the Securities Acts were relied on to confer jurisdiction including 80a–34(d) which makes it unlawful "for any registered investment company hereafter to adopt as a part of the name or title of such company * * * any word or words which the Commission finds and by order declares to be deceptive or misleading". It appeared to the Court that as the federal claim was not frivolous or a sham the Fund had standing to prosecute the action but there was no need to rule substantively on the federal causes.

In Aldred Mo. Trust v. Securities and Exchange Commission, 1 Cir., 1945, 151 F.2d 254 the Commission sued under the Investment Company Act to enjoin the officers of an investment trust from continuing to act in such capacity and for

the appointment of a receiver under 15 U.S.C.A. § 80a–35 commonly referred to as the "gross abuse of trust" section. The case illustrates the instance in which the Act does deal with the matter of directors duty. It creates a right of action against directors to remove them from office for gross abuse of trust but it must be done on the initiative of the Commission. It furnishes no support for the liability of directors which Fund asserts on this appeal. In paragraph 1 and 2 on page 260, the Court refers to provisions of 15 U.S.C.A. § 80a–1(b) as effecting a codification of the fiduciary obligations imposed upon officers and directors of investment companies but the codification is of duties of the companies and the reference does not support a conclusion that Congress thereby created a federal cause of action in private individuals or by investment companies against their directors.

In Cogan v. Johnston, D.C.S.D.N.Y. 1958, 162 F.Supp. 907, 908 the plaintiff suing individually and as a stockholder of an investment company which had been deregistered by the Securities and Exchange Commission charged a continuing conspiracy by the company and its officers and directors to violate the 1940 Investment Company Act and with violations of the Act "in numerous ways". The relief sought was injunction against the continuing violations of the Act and injunction against the individual defendants preventing them from combining as officers and directors and for the appointment of a receiver to enable the company to comply with the Act. There was also a charge that the defendants caused the company to violate the Act for their own interests and were guilty of gross abuse of trust as officers and directors.

The District Court held that the individual stockholders had no standing to bring an action based on the gross abuse of trust section, 15 U.S.C.A. § 80a–35. The Court declared however that it did not "appear to a certainty that the plaintiff is entitled to no relief under any state of facts which may be proved in support of his claim" and denied the motion to dismiss.

The appellants say in reference to the Cogan case that if the holding there is that directors are liable for the acts of their corporation in violation of the 1940 Act, it is wrongly decided and should not be followed by this Court.

Respecting Schwartz v. Bowman, D.C. S.D.N.Y.1957, 156 F.Supp. 361 and related cases of Breswick & Co. v. United States, D.C.S.D.N.Y.1955, 134 F.Supp. 133, and Breswick & Co. v. Briggs, 1955, 135 F.Supp. 397, the federal case in Schwartz was violation by the Alleghany Railroad of the Investment Company Act by acquiring the New York Central stock without registering under the Act. The Court on appeal said a joint venture or conspiracy to cause C. & O. and Alleghany to engage in a transaction prohibited by the Act was charged. Appellants stress the contention that "there is a fundamental and critical distinction to be drawn between a case where a director is an actor and joint tort feasor in violating a statute and a case where the asserted liability is predicated upon vicarious liability for allegedly causing the corporation he serves to violate the statute". Because the Investment Company Act does not, as do the 1933 and 1934 Acts, create a joint duty and liability none can be implied to create a federal case. The conspiracy in the Schwartz and Breswick cases distinguish them from the present appeal.

We do not find Bell v. Hood, 1945, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, to be relevant. The intent and effect of the decision as applied to the facts in that case were thoroughly considered by the District Court when the case was returned to it. 71 F.Supp. 813. The claim before the Supreme Court was that defendants had violated specified provisions of the federal law and Constitution. The doctrine of jurisdiction by implication where the federal statute has not imposed a duty was not discussed by the Supreme Court.

The District Court stated the rule it was required to follow, loc. cit. 820:

" 'Where, as here, neither the Constitutional provision nor any Act of Congress affords a remedy to any person, the mere assertion by a plaintiff that he is entitled to such a remedy' does not constitute a federal cause of action * * *.

"In assuming jurisdiction under the mandate of the Supreme Court, this court is called upon to decide 'the issue of law * * * whether federal courts can grant money recovery for damages said to have been suffered as a result of federal officers violating the Fourth and Fifth Amendments.' * * *

"Being of the opinion that neither the Constitution nor the statutes of the United States give rise to any cause of action in favor of plaintiffs upon the facts alleged, I hold that federal courts cannot now grant such recovery. Nor does any other ground appear upon which relief can be granted to plaintiffs in this court."

 On consideration of the whole record and citations we conclude the claim stated against these appellants does not support the federal jurisdiction. At common law directors are liable to exercise due care and are not insurers. 13 Am.Jur.Corporation Sec. 990, pp. 943–944. The complaints here substantially seek to hold these former directors to strict liability as insurers. The Act they rely on not only contains no such provision but plainly negates any intent to create such an innovation. The reliance upon implication to support the jurisdiction is not justified in the face of the legislative intent to exclude it.

In view of the conclusion that the motions for dismissal as to these appellants for lack of jurisdiction of the subject matter of the claim against them should be sustained, we need not discuss the question as to the out of the State service upon appellants, Rebstock and Rice.

Reversed with direction to dismiss the case as to these appellants.